# Wytheville

### G. W. DUNSTON v. CITY OF NORFOLK.

June 9, 1941.

Record No. 2298.

Present, All the Justices.

*Breeden & Hoffman,* for the plaintiff in error.

*Alfred Anderson* and *Jonathan W. Old,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

G. W. Dunston, hereinafter referred to as the defendant, appeals from a judgment convicting him of operating a business as a retail merchant, in the city of Norfolk, Virginia, without obtaining a license required by an ordinance of that city. The trial court heard the case without a jury, and the defendant was fined five dollars and costs.

The agreed facts were as follows:

"The defendant has a fixed place of business on the third floor of the Board of Trade Building, in the City of Norfolk, Virginia, on the door of which appear the words 'Local Representative,' for the International Tailoring Company with offices in Chicago, Illinois, and New York, New York. The Tailoring Company provides the defendant with a set of samples, clearly identified as the property of the Tailoring Company, with which the defendant exhibits the same cloth to his prospective customers. The Tailoring Company also provides the defendant with an order book in which the defendant's name does not appear, the entire order book carrying the name of International Tailoring Company.

"No finished articles of merchandise are ever provided the defendant nor does the defendant carry any stock of merchandise on hand for sale to the public.

"If a prospective customer indicates his willingness to purchase a suit of clothes, the defendant takes all necessary measurements and the customer then signs an order blank addressed to the Internatonal Tailoring Company at New York. The customer also pays the defendant a small deposit with the order, the deposit not exceeding twenty per centum of the entire purchase price.

The defendant then takes the original order blank and sends it to the Tailoring Company in New York in an envelope provided by the Tailoring Company for that purpose. A copy of the order blank is furnished the customer.

"The suit is manufactured in the State of New York in accordance with the order and thereafter shipped to the defendant or direct to the customer. Most of the shipments are made direct to the customer, but in some cases it is more convenient to ship to the defendant who, in turn, delivers the suit and collects the remaining balance from the customer.

"The Tailoring Company retains the right to reject any and all orders at its option. Likewise the customer retains the right to reject the suit in the event it does not fit.

"When the suit arrives and in the event the fit is not satisfactory to the customer, the customer quite naturally goes to the defendant. If the alterations required are of a major nature, the defendant returns the suit to New York with directions as to the necessary alterations. In that event the expense of these alterations are borne by the Tailoring Company. In the event the required alterations are of a minor character, the defendant takes the suit to a local tailor where the alterations are made and paid for by the defendant personally after which time the suit is again delivered by the defendant to the customer."

The pertinent provisions of section 100 of the license ordinance of the city of Norfolk are:

"All merchants who sell to the consumer and are not classified as wholesale merchants by the section of this ordinance imposing a license tax on wholesale merchants shall be deemed to be retail merchants.

"Every person, firm or corporation engaged in the business of a retail merchant, shall pay a license tax for the privilege of doing business in the City of Norfolk to be measured by the amount of sales made by him or it

in said business, whether paid for or not, during the calendar year ending with the 31st day of December, next preceding.

"Where the amount of said sales does not exceed $5,000.00, $30.00, where the amount of said sales exceeds $5,000.00 and does not exceed $75,000.00, an additional tax of $2.00 for each $1,000.00 of said sales in excess of $5,000.00 and not in excess of $75,000.00; and where the amount of said sales exceeds $75,000.00, an additional tax of seventy cents (70c) for each $1,000.00 of said sales in excess of $75,000.00."

The defendant contends that he is engaged in interstate commerce and is exempt from the license tax by virtue of the provisions of the Federal Constitution relating to such commerce.

In one form or another and under varying facts and circumstances, the question of the right of a State or municipality to levy a tax upon those engaged in interstate commerce has been considered in a multitude of cases in both the State and Federal courts. It is unnecessary to name them here, since many of them, especially those pertinent to the present issue, will be found cited and discussed in the cases hereinafter reviewed.

The defendant relies on the often cited case of *Robbins* v. *Shelby County Taxing Dist.*, 120 U. S. 489, 7 S. Ct. 592, 30 L. Ed. 694, decided in 1887, and the decisions in line with it. There it was held that state taxation upon interstate commerce or upon the privilege of engaging in it was a burden, and consequently violative of the purpose of the commerce clause. A vigorous dissent by Mr. Chief Justice Waite, joined in by Mr. Justice Field and Mr. Justice Gray, asserted the principle that the validity of a state tax depended upon the question whether it was discriminatory against citizens of one State in favor of those of another.

In recent years, there has been a gradual relaxation and modification of the strict and narrow interpretation applied in the above case as to the purpose of the com-

merce clause. The decisions in many of the later cases are predicated upon the presence or absence of discrimination.

Finally, the Supreme Court of the United States has declined to deny to the States the right to levy a tax upon interstate commerce merely because it is such commerce. The latest cases recognize and admit the right of the States to require such commerce to bear its fair share of the cost of local government, notwithstanding the fact that the exercise of such right may, in some measure, affect the commerce or increase the cost of doing business. They declare that the purpose of the commerce clause is to allow interstate commerce to compete on a fair and equal basis with local commerce.

Under the principles at present applied, the test of the validity of a State taxing law is whether it may, in its practical operation, be made an instrument for impeding or destroying interstate commerce or placing it at a disadvantage in competition with intrastate business.

In *Western Live Stock* v. *Bureau of Revenue,* 303 U. S. 250, 58 S. Ct. 546, 82 L. Ed. 823, 115 A. L. R. 944, the Court said:

"It was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing the business. 'Even interstate business must pay its way,' (cases cited), and the bare fact that one is carrying on interstate commerce does not relieve him from many forms of State taxation which add to the cost of his business."

The change of interpretation thus evidenced was more fully enlarged and amplified, in 1940, in the three cases of *McGoldrick* v. *Berwind-White Coal Mining Co.,* 309 U. S. 33, 60 S. Ct. 388, 84 L. Ed. 565; and *McGoldrick* v. *Felt & Tarrant Mfg. Co.,* and *McGoldrick* v. *A. H. Du-Grenier, Inc.,* 309 U. S. 70, 60 S. Ct. 404, 84 L. Ed. 584, sometimes referred to as the New York City Sales Tax

Cases. Mr. Chief Justice Hughes and two of the Associate Justices, in a strong dissent, adhered to the principle of the *Robbins Case*. The majority and minority opinions show a careful consideration of the issue in question here, thus bringing out in bold relief the attitude of the Supreme Court of the United States at the present time.

In the *Berwind-White Coal Mining Co. Case, supra,* the defendant, a Pennsylvania corporation, maintained a sales office in New York City for the sale of coal. The coal was moved by rail from the mines in Pennsylvania to the docks in New Jersey, thence, after contracts of sale were made in New York City, by barges to the place of delivery in New York City. The New York City tax law placed a sales tax of two per cent upon the amount of the receipts from every sale in the city. It provided that the tax should be paid by the purchaser to the vendor for and on account of the City of New York, but made the vendor liable as an insurer for its payment to the city.

In the *Felt & Tarrant Mfg. Co. Case, supra,* the defendant had its factory and principal place of business in Illinois, where it manufactured and sold adding and calculating machines. It maintained an office in New York City, from which its agents solicited orders for comptometers. Each order was forwarded to the Illinois office for approval and, if accepted, was filled by allocating to it the purchased machine, designated by its serial number. It was then invoiced to the purchaser and shipped to the New York City sales office, where it was inspected, tested and adjusted and then delivered to the purchaser. Remittances were made by the purchaser direct to the Illinois office.

In the *A. H. Du Grenier, Inc., Case, supra,* the defendant, a Massachusetts corporation with its factory and principal office in that State, was engaged in the manufacture and sale of automatic vending machines. Its sales agent had an office in New York City, where sales

were effected through solicitation of orders by the agent. The agent took from a prospective purchaser a signed order or contract which was forwarded to the home office in Massachusetts. If accepted, the order was filled by shipping the purchased machine by rail or truck direct to the purchaser in New York City.

It was contended that the New York City sales tax constituted a direct and undue burden upon interstate commerce and that it subjected such commerce to the danger of cumulative tax burdens to which local transactions were not exposed. In each instance the validity of the tax levy was upheld.

The opinion of Mr. Justice Stone in the *Berwind-White Coal Mining Co. Case, supra,* adopted in the two companion cases, is a learned and exhaustive review of the history and purpose of the commerce clause of the Federal Constitution. It cites numerous cases and reviews and differentiates the principles applied in them. Because of its bearing upon the question before us, we quote at length from the opinion.

"Section 8 of the Constitution declares that 'Congress shall have power * * * to regulate commerce with foreign Nations, and among the several States. * * * ' In imposing taxes for state purposes a state is not exercising any power which the Constitution has conferred upon Congress. It is only when the tax operates to regulate commerce between the states or with foreign nations to an extent which infringes the authority conferred upon Congress, that the tax can be said to exceed constitutional limitations. See *Gibbons* v. *Ogden,* 9 Wheat. 1, 187 [6 L. Ed. 23, 68]; *South Carolina Highway Dept.* v. *Barnwell Bros.,* 303 U. S. 177, 185 [58 S. Ct. 510, 82 L. Ed. 734]. Forms of state taxation whose tendency is to prohibit the commerce or place it at a disadvantage as compared or in competition with intrastate commerce, and any state tax which discriminates against the commerce, are familiar examples of the exercise of state taxing power in an unconstitutional man-

ner, because of its obvious regulatory effect upon commerce between the states.

"But it was not the purpose of the commerce clause to relieve those engaged in interstate commerce of their just share of state tax burdens, merely because an incidental or consequential effect of the tax is an increase in the cost of doing the business, *Western Live Stock* v. *Bureau,* 303 U. S. 250, 254 [58 S. Ct. 546, 82 L. Ed. 823]. Not all state taxation is to be condemned because, in some manner, it has an effect upon commerce between the states, and there are many forms of tax whose burdens, when distributed through the play of economic forces, affect interstate commerce, which nevertheless fall short of the regulation of the commerce which the Constitution leaves to Congress. * * *

"In few of these cases could it be said with assurance that the local tax does not in some measure affect the commerce or increase the cost of doing it. But in them as in other instances of constitutional interpretation so as to insure the harmonious operation of powers reserved to the states with those conferred upon the national government, courts are called upon to reconcile competing constitutional demands, that commerce between the states shall not be unduly impeded by state action, and that the power to lay taxes for the support of state government shall not be unduly curtailed. (Cases cited.)

"It is also urged that the conclusion which we reach is inconsistent with the long line of decisions of this court following *Robbins* v. *Shelby County Taxing District,* 120 U. S. 489 [7 S. Ct. 592, 30 L. Ed. 694, I Inters. Com. Rep. 45], which have held invalid, license taxes to the extent that they have sought to tax the occupation of soliciting orders for the purchase of goods to be shipped into the taxing state. In some instances the tax appeared to be aimed at suppression or placing at a disadvantage this type of business when brought into competition with competing intrastate sales. (Cases cited.)

In all, the statute, in its practical operation, was capable of use, through increase in the tax, and in fact operated to some extent to place the merchant thus doing business interstate at a disadvantage in competition with untaxed sales at retail stores within the state. While a state, in some circumstances, may by taxation suppress or curtail one type of intrastate business to the advantage of another type of competing business which is left untaxed (cases cited), it does not follow that interstate commerce may be similarly affected by the practical operation of a state taxing statute. (Cases cited.) It is enough for present purposes that the rule of *Robbins* v. *Shelby County Taxing District* [120 U. S. 489, 7 S. Ct. 592, 30 L. Ed. 694, 1 Inters. Com. Rep. 45], *supra,* has been narrowly limited to fixed-sum license taxes imposed on the business of soliciting orders for the purchase of goods to be shipped interstate. (Cases cited) * * * ''

In *Best & Company* v. *Maxwell,* 311 U. S. 454, 61 S. Ct. 334, 85 L. Ed. 274, decided December 23, 1940, it was held that the validity of a state tax upon interstate business, was to be determined by whether or not the tax, in its practical operation, would work a discrimination against interstate commerce. In that case, a state statute requiring the payment of a fixed-sum license tax of $250 for the privilege of conducting an interstate business, as compared with the corresponding tax of $1 upon the local business of real competitors, was held discriminatory and invalid. The discrimination was obvious and clear. The decision was not based upon the actual fact that interstate commerce was involved.

In upholding the constitutionality of the Iowa use tax, in *Nelson* v. *Sears, Roebuck & Co.,* 312 U. S. 359, 61 S. Ct. 586, 85 L. Ed. 522, decided February 17, 1941, Mr. Justice Douglas, speaking for the court, said: "In passing on the constitutionality of a tax law 'we are concerned only with its practical operation, not its defini-

tion or the precise form of descriptive words which may be applied to it.' (Citing cases.)

" * * * As we have seen, the use tax and the sales tax are complementary. Sales made wholly within Iowa carry the same burden as these mail order sales. A tax or other burden obviously does not discriminate against interstate commerce where 'equality is its theme.' *Henneford* v. *Silas Mason Co., supra,* [300 U. S. 577], pp. 583-586; *McGoldrick* v. *Berwind-White Coal Mining Co., supra,* pp. 48-49."

■ The decision in the *Berwind-White Coal Mining Co. Case, supra,* was made in connection with a sales tax based on the amount of the sales made. The sale contracts were entered into in New York City, and the delivery of the merchandise was made in that city. The instant case is in connection with a privilege tax,—a tax measured by the amount of sales made by the taxpayer. The sales were negotiated in Norfolk and there consummated by a transfer of title or delivery of possession. Both the Berwind-White Coal Mining Company and Dunston had a fixed place of business in their respective cities. A non-discriminatory privilege tax has no different effect upon interstate commerce than a sales tax or a use tax. Each adds to the ultimate cost to the purchaser. That the tax is paid in one instance by the purchaser, and in the other by the vendor does not affect the interstate or intrastate phase of the transaction.

■ The Norfolk ordinance imposes a license tax for the privilege of doing business in that city and applies to all persons doing that type of business therein. The tax is not against interstate commerce, as such. It imposes no burden which intrastate commerce does not bear. It does not put interstate commerce at a disadvantage in competition with local business. Nor is interstate commerce subjected to a greater burden, or the danger of a greater burden than would result if no interstate commerce were involved. "Equality is its

theme." It is a practical way of levying upon Dunston his share of the local tax burdens, measured by the volume of the business of the taxpayer in that city.

The issues and the principles involved in the New York City cases and the instant case are too closely alike to be differentiated.

The city of Norfolk further contends that the peculiar facts of this case take the business in which the defendant is engaged out of interstate commerce. It relies upon *Browning* v. *City of Waycross*, 233 U. S. 16, 34 S. Ct. 578, 58 L. Ed. 828; *General Oil Co.* v. *Crain*, 209 U. S. 211, 28 S. Ct. 475, 52 L. Ed. 754, and *Ficklen* v. *Shelby County Taxing Dist.*, 145 U. S. 1, 12 S. Ct. 810, 36 L. Ed. 601. It is unnecessary to consider this contention in view of our conclusion on the first question raised. Cases from other States and from this State decided prior to the year 1940 are not helpful to us. The facts in many of them differ from those now before us. They are not controlling here and, in view of the latest decisions of the Supreme Court of the United States, are not persuasive.

The case before us is controlled, we think, by the principles expressed in *McGoldrick* v. *Berwind-White Coal Mining Co., supra*, and its companion cases. Not only do we feel bound by those decisions, but we think they are based on sound reason and in due regard for the purpose set out in the Federal Constitution.

A statute is always presumed to be valid and is not to be declared void unless its nullity and invalidity appear beyond reasonable doubt. Doubts are always resolved in favor of its constitutionality. Cooley, Const. Lim. (7th Ed.), page 252, *et seq.*, and cases cited.

It does not appear to us that the tax ordinance of the city of Norfolk effects any discrimination, actual or potential, against interstate commerce, or adds any burden thereto in the nature of a regulation contrary to the commerce clause. There is no magic in the name by which the tax may be described. It is the effect of its

operation that is important. The possibilities of the consequences prohibited by the Constitution are absent.

For the foregoing reasons, we are of opinion that the provisions of the ordinance of the city of Norfolk do not infringe the purpose of the commerce clause. The purpose of that clause is to secure and preserve equality for national commerce, unfettered by regional legislation.

The judgment of the trial court is affirmed.

*Affirmed.*

CAMPBELL, C. J. and BROWNING, J., dissenting.

I am unable to agree with the majority opinion. The applicability of an ordinance of the city of Norfolk imposing a license tax upon retail merchants, based upon the amount of their sales, is questioned by the petitioner. The facts seem fairly stated in the opinion, therefore they will not be re-stated nor will the ordinance be repeated.

The petitioner does not carry any merchandise for sale to the public. He has no stock on hand. In this respect his activities differ from those of a "merchant" or "retail merchant", terms found in the statute. His legal status is that of an agent of a firm which is a resident of another state and which does a tailoring business, through its agent, by sample and by mail order. The contract of sale and purchase takes final effect in the foreign state where the suits of clothes are manufactured and where all the major physical operations incident to their completion take place. To call the agent here a "merchant" of any type is to give to the statute a meaning and application never contemplated by the legislature.

This and other courts have defined the term "merchant."

In *White* v. *Commonwealth*, 78 Va. 484, 485, it is said:

"A merchant is a dealer in goods, wares, and merchandise, who has the same on hand for sale and present delivery."

In *State* v. *West,* 34 Mo. 424, 428, Words and Phrases (1st ed.), Vol. 5, p. 4487:

" 'Merchant,' as used in Acts 1859, p. 53, requiring a merchant to take out a license for the privilege of conducting his business, etc., does not include a tailor who keeps cloths, etc., which he makes up into clothing only for the personal use of his customers. To be a merchant, in the sense of the law, the dealer must have on hand goods, wares, and merchandise ready for sale and present delivery, and must also actually deal in the selling of the same."

The defendant in the trial court admitted that he declined to pay the license tax in question for the current year. The medium of a jury was dispensed with by agreement. The court adjudged the defendant guilty of the charge laid in the warrant, which alleged a violation of the provisions of the ordinance of the city.

The penalty imposed was a fine of five dollars and the payment of the costs of the proceedings.

It is conceded that the sole issue in this case is whether the defendant's business is that of interstate commerce. If so, the license tax imposed by the city of Norfolk is offensive to the inhibition of the federal Constitution and, of course, cannot be applied in this and like cases. It is of no moment that the municipality imposes the license tax on its own citizens doing intrastate business, as will be seen from the authorities presently to be cited, nor is it material that the defendant had a fixed place of business in the municipality.

In *Davis* v. *Commonwealth of Virginia,* 236 U. S. 697, 35 S. Ct. 479, 59 L. Ed. 795, this court was reversed by the Supreme Court of the United States. That court said, in part, in relation to facts involving some of the same principles inhering here:

"The court below thought that the purchase of the

frames was to be regarded as a separate transaction oc-
curring wholly in Virginia. Whether or not this was
its technical aspect as an executed contract, it often has
been pointed out that commerce among the states is a
practical not a technical conception. * * * From the point
of view of commerce the business was one affair.''

Several ''technical conceptions'' are urged as differ-
entiating this case from others, which have been de-
cided, so as to bring it within the right of the taxing
power to impose the license, but we think they give way
to the rationale of the law, which is a ''practical con-
ception''.

The case of *Dalton Adding Mach. Co.* v. *Common-
wealth*, 118 Va. 563, 567, 88 S. E. 167, does not differ
materially from the case here, except in a non-essential
particular, and there it is said:

''The agent exhibits a sample machine to the cus-
tomer, and if the customer desires to buy he signs an
order for a machine, describing its accessories accurately,
addressed to the Dalton Adding Machine Company at
its home office; if satisfactory to the company, a ma-
chine is shipped from the factory either to the customer
or to the agent in Virginia, to be delivered to the cus-
tomer.

''As to this part of the business there is no difference
of opinion. It is strictly interstate commerce, protected
by the commerce clause of the Constitution, and the
State can impose no condition, license tax, or any other
burden whatever, upon such business.'' This case was
affirmed by the Supreme Court of the United States in
246 U. S. 498, 38 S. Ct. 361, 62 L. Ed. 851.

As to the point emphasized by the city, that the de-
fendant had within it a fixed place of business, the Su-
preme Court of the United States has said in the case
of *Cheney Bros. Co.* v. *Commonwealth of Massachusetts*,
246 U. S. 147, 38 S. Ct. 295, 62 L. Ed. 632:

''The maintenance of the Boston office and the display
therein of a supply of samples are in furtherance of the

company's interstate business and have no other purpose. Like the employment of the salesman, they are among the means by which that business is carried on and share its immunity from state taxation.''

See *Adkins* v. *City of Richmond,* 98 Va. 91, 34 S. E. 967, 81 Am. St. Rep. 702, 47 L. R. A. 583, and *Commonwealth* v. *Castner, Curran & Bullitt,* 138 Va. 81, 121 S. E. 894.

''It is an established rule, which applies *a fortiori* where the orders obtained are subject to acceptance or rejection, that the solicitation within the state of orders for goods by the agent of a foreign manufacturer or corporation, whether by sample or otherwise, and the shipment of goods pursuant to such orders from another state to purchasers constitute interstate commerce, and persons engaged in such solicitations cannot be embarrassed or obstructed by state requirements as to the taking out of licenses, filing certificates, establishing resident agencies, and the like. Where the goods are to be shipped from another state, soliciting agents are deemed to be engaged in interstate commerce regardless of whether the orders are taken from residents or non-residents or whether they are taken from individuals, manufacturers, licensed merchants, or dealers. It is immaterial that they collect the purchase price of the goods from the purchasers or that they travel at their own expense and receive their compensation through retention of advance partial payments on goods ordered. * * * '' American Jurisprudence, vol. 11, page 45, section 46.

''Neither a state nor municipality may tax a business which constitutes interstate commerce by imposing a license on agents or salesmen. Thus, a local political subdivision may not impose a tax upon the business of soliciting transportation of freight or passengers in interstate or foreign commerce or upon the business of soliciting orders for goods which are to be shipped in interstate commerce. * * * '' American Jurisprudence, vol. 11, page 104, section 118.

In *Simpson, Inc.* v. *O'Hara*, 277 Mich. 55, 258 N. W. 809, 810, 811, it is said:

"The general rule found in the foregoing authorities is well stated in 5 R. C. L., pp. 768, 769, and 770:

" 'The negotiation of sales of goods which are in other states, for the purpose of introducing them into the State in which the negotiation is made, is interstate commerce, and cannot be interfered with, regulated, or taxed by the State in which the negotiation was made, though there be no discrimination between such business and domestic commerce, and this rule applies to persons who engage in the business of soliciting orders by sample or otherwise for goods to be shipped from another State, such as agents of non-resident manufacturers or dealers, drummers or canvassers. * * *

" 'It makes no difference with reference to the interstate character of a sale, made on a contract for the purchase of goods, which are to be shipped from another State, that the goods are to be consigned to the shipper or the agent to whom the order is given, and to be delivered by the agent on payment of the purchase price.'

"That some alterations are made in Michigan upon the finished garments does not change the rule. Where a part of a contract for the sale of furniture included installation, which consisted of uncrating the furniture, putting it in rooms, attaching mirrors, assembling beds, dusting and polishing and removing marks and soils, this court said all these things were 'dissociated from any attempt to connect them with or make them a part in the state of property which had not and could not have been the subject of interstate commerce.' *Browning* v. *City of Waycross*, 233 U. S. 16, 34 S. Ct. 578, 580, 58 L. Ed. 828.

"They were incidents of delivery, which is a part of interstate commerce. (Cases cited.)

"The argument that failure to tax such transactions imposes a discriminatory handicap upon the local merchants of the state has long since been answered and dis-

posed of in *Robbins* v. *Taxing District of Shelby County,* 120 U. S. 489, 7 S. Ct. 592, 30 L. Ed. 694.''

The case cited involved the sale of men's clothing on orders taken in Michigan and forwarded to Chicago, Illinois, for acceptance, where its principal office and plant is located. It maintained a branch office in Detroit, Michigan, where samples of cloth and clothing were displayed and the orders taken by its salesmen were accumulated and forwarded to the home office. Suits were only made in Chicago upon individual orders and according to the customers' measurements, and then only after the signed order was accepted. Upon its completion the garment was sent direct to the customer, or with others to Detroit for delivery from the company's branch office. Minor alterations were made at the seller's expense, either by a tailor of the customer's selection, or by bushelmen employed by it at the Detroit office.

It was held that such a sale was not made in Michigan, but in Illinois, and, being interstate commerce, could not be taxed in the state of Michigan.

*Robbins* v. *Shelby County Taxing Dist., supra,* dealt with the question of whether a direct tax was saved from the inhibitory feature of the Constitution of the United States because the same or a similar tax is laid also upon intrastate commerce, saying:

''Interstate commerce cannot be taxed at all, even though the same amount of tax should be laid on domestic commerce, or that which is carried on solely within the state.''

See also *Cooney* v. *Mountain States Telephone & Telegraph Co.,* 294 U. S. 384, 393, 394, 55 S. Ct. 477, 79 L. Ed. 934, 941, 942; *Adams Mfg. Co.* v. *Storen,* 304 U. S. 307, 312, 58 S. Ct. 913, 82 L. Ed. 1365, 117 A. L. R. 429.

One of the principal cases cited by the city as furnishing a basis for its contentions is that of *Browning* v. *City of Waycross,* 233 U. S. 16, 34 S. Ct. 578, 58 L. Ed. 828. Its controlling facts are so dissimilar to those of

the case we are considering that nothing more need be said of it except that in the later case of *York Mfg. Co. v. Colley*, 247 U. S. 21, 38 S. Ct. 430, 62 L. Ed. 963, 11 A. L. R. 611, the court made very clear the distinguishing features of the *Browning*, and kindred cases, from cases of the same character as that in hand. Were we to indulge the inclination to elaborate this feature, this dissent would be critically prolix.

The three cases recently decided by the Supreme Court of the United States of *McGoldrick* v. *Berwind-White Coal Mining Co.*, 309 U. S. 33, 60 S. Ct. 388, 64 L. Ed. 565, and *McGoldrick* v. *A. H. Du Grenier, Inc.*, 309 U. S. 70, 60 S. Ct. 404, 84 L. Ed. 594, and *McGoldrick* v. *Felt & Tarrant Mfg. Co.*, 309 U. S. 70, 60 S. Ct. 404, 84 L. Ed. 584, are alike inappropriate for the purpose for which they are cited by the city in the majority opinion. They are of the genus known as "sales tax cases" which are controlled by entirely different circumstances. In the opinion which disposes of these cases, it is said:

"Certain types of tax may, if permitted at all, so readily be made the instrument of impeding or destroying interstate commerce as plainly to call for their condemnation as forbidden regulations. Such are the taxes already noted which are aimed at or discriminate against the commerce or impose a levy for the privilege of doing it, or tax interstate transportation or communication or their gross earnings, or levy an exaction on merchandise in the course of its interstate journey."

The three cases referred to are authority for the position taken in this dissent.

In *McGoldrick* v. *Berwind-White Coal Mining Co.*, 309 U. S. 33, 60 S. Ct. 388, 391, 64 L. Ed. 565, it is said:

"Forms of state taxation whose *tendency is to prohibit* the commerce or place it at a disadvantage as compared or in competition with intrastate commerce and any state tax which discriminates against the commerce, are familiar examples of the exercise of state taxing power in an unconstitutional manner, because of its ob-

vious regulatory effect upon commerce between the states.''

To the above quoted language there is a footnote which says:

''License taxes requiring a corporation engaged in interstate commerce to pay a fee of a certain percentage of its capital stock have been rejected because of the danger that each state in which the corporation does business may impose a similar tax, measured by its interstate business in all, *Western Union Tel. Co.* v. *Kansas*, 216 U. S. 1, 30 S. Ct. 190, 54 L. Ed. 355; *Atchison, T. & S. F. Ry. Co.* v. *O'Conner*, 223 U. S. 280, 32 S. Ct. 216, 56 L. Ed. 436, Ann. Cas. 1913 C, 1050; *Looney* v. *Crane*, 245 U. S. 178, 38 S. Ct. 85, 62 L. Ed. 230; *International Paper Co.* v. *Massachusetts*, 246 U. S. 135, 38 S. Ct. 292, 62 L. Ed. 624, Ann. Cas. 1918 C, 617, and have only been sustained when apportioned to that part of the capital thought to be attributable to an intrastate activity. (Citing cases.)

''Privilege taxes requiring a percentage of the gross receipts from interstate transportation or from other activities in carrying on the movement of that commerce, which if sustained, could be imposed wherever the interstate activity occurs, have been struck down for similar reasons. *Fargo* v. *Michigan*, 121 U. S. 230, 7 S. Ct. 857, 30 L. Ed. 888; *Philadelphia & S. M. Steamship Co.* v. *Pennsylvania*, 122 U. S. 326, 7 S. Ct. 1118, 30 L. Ed. 1200; *Leloup* v. *Mobile*, 127 U. S. 640, 8 S. Ct. 1380, 32 L. Ed. 311; *Galveston, H. & S. A. R. Co.* v. *Texas*, 210 U. S. 217, 28 S. Ct. 638, 52 L. Ed. 1031; cf. *Gwin, White & Prince* v. *Henneford*, 305 U. S. 434, 59 S. Ct. 325, 83 L. Ed. 272.

''Fixed-sum license fees, regardless of the amount, for the privilege of carrying on the commerce, have been thought likely to be used to overburden the interstate commerce.'' (Citing cases.)

I hold that the defendant is immune from the license tax sought to be imposed by the city for the reasons

herein stated. All of the incidents of the business constitute a unitary state transaction. They are integral parts of interstate sales.

Small pretext seems now to justify the whittling away of our muniment of sovereignty—the Constitution of the United States. With humility but with firmness I oppose this trend, whatever its genesis. As I see it, we have here, at least, an unwarranted relaxation of a solemn constitutional provisions in order to sustain a municipal ordinance conceived in the avarice of a money-getting, revenue-producing obsession. Unless there is a halt sometime, somewhere, we shall surely come upon a sorry day.