# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## H. L. PELOUZE, TRADING, ETC. v. CITY OF RICHMOND.

April 23, 1945.

Record No. 2915.

Present, All the Justices.

The opinion states the case.

*C. V. Werne,* for the plaintiff in error.

*Horace H. Edwards* and *Henry R. Miller, Jr.,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

A judgment for $422.59 was rendered against the plaintiff in error, H. L. Pelouze, trading as Pelouze Sales Company, in favor of the City of Richmond, for certain license taxes for the years 1940, 1941, 1942 and 1943.

The case originated by a warrant in the Civil Justice Court of the city of Richmond on the 20th day of October, 1943. An affidavit of substantial defense was made, and under Code, sec. 3102 (Michie), the case was removed to the Law and Equity Court of the city of Richmond, where it was tried before the judge of that court without a jury, by consent of both parties.

The plaintiff in error is and has been a citizen and resident of the City of Richmond for a number of years, including the years 1940, 1941, 1942, and 1943, and was engaged in soliciting orders for the sale of various appliances used in the heating of buildings as well as other similar devices. He was an exclusive sales agent for the City of Richmond and certain counties in Virginia. His principals were nonresidents of the State of Virginia. The orders were solicited for the non-resident principals, and were sent direct to them, and they either confirmed or rejected the orders. If the orders were accepted by the principals the articles were shipped directly from the out-of-state principals to the purchasers within the City of Richmond and certain counties embraced in the territory. The invoices, the collections and other incidents connected with each transaction were handled entirely by the principals. Upon the orders confirmed, the plaintiff in error was paid a commission by his principals at regular intervals. He maintained his own office in the City of Richmond, at his own expense. He

carried no materials or stock on hand, and made no deliveries.

The tax was assessed by the Commissioner of the Revenue under section 22 of chapter 10 of the Richmond City Code of 1937, as amended. That section provides:

"Agents—Sales Agents or Agencies—Persons, firms or corporations engaged in business as sales agents or agencies, $50.00, and one-half of one percentum of the gross earnings, receipts, fees, or commissions for the preceding license year, in excess of $1,000."

The plaintiff in error contended in the lower court and assigns here as a ground for reversal of the judgment that the court below erred in not dismissing the action for the non-payment by the city of a writ tax. He also contends that there was insufficient evidence upon which the judgment could be sustained, and finally he contends that the tax imposed constitutes an unreasonable burden upon interstate commerce, and is therefore void.

Code, sec. 3102 (Michie), provides, in part, that "the plaintiff shall within thirty days from the date of such removal pay to the clerk of the court to which the case has been removed the amount of the writ tax as fixed by law, and four dollars on account of costs in said court, and in the event of his failure so to do, the case shall stand dismissed. * * * "

And section 126 of the Tax Code provides:

"When any original suit * * * is commenced in a court of record, and in every case of removal or appeal of a cause from a justice's court to a court of record. * * * there shall be a tax thereon if the amount of the debt or demand for damages shall not exceed $1,000, of $1.00 * * * . The taxes on suits or other judicial proceedings shall be paid to the clerks of the courts, respectively, in which such suits are brought by proceedings had. No clerk shall issue any writ or docket any removed or appealed warrant or any notice mentioned in this section until the tax thereon shall be paid".

The plaintiff in error contends that the City of Richmond has violated the provisions of the quoted sections by its

failure to pay the writ tax, and therefore its action must stand dismissed.

The city on the other hand takes the position that the writ tax referred to in Code, sec. 3102, and section 126 of the Tax Code is not assessable on behalf of the State against the City of Richmond, one of its political subdivisions; and that there is no express requirement or justifiable implication that cities shall pay such writ tax.

■ The city relies upon two opinions of the Attorney General, concurred in by the State Tax Commissioner. The Attorney General, in those opinions—one of November 3, 1938, and another of December 9, 1943—was of the view that a city is not required to pay a writ tax in order to institute and maintain an action or suit in any court in this Commonwealth. It is also a matter of common knowledge that the general practice of municipalities throughout the Commonwealth is not to pay a writ tax upon its actions or suits. This administrative practice of the State officials and the wide-spread general practice of the clerks of the courts in not charging and collecting from municipalities a writ tax for instituting their actions and suits has not been changed by the legislature, and strongly supports the conclusion that cities and other municipalities should be exempt from liability to pay a writ tax. The Attorney General in his opinion of November 3, 1938 (see printed published opinions of the Attorney General for the period 1938-39, p. 181) expresses this view, in which we concur:

■ "It is plain, and this office has frequently so held, that the charge imposed by section 126 of the Tax Code is a tax and not a fee. The general rule is that a statute will not be construed to tax the property of a municipality unless such an intention is clearly manifested by the statute. See 61 C. J. at p. 369. This is true although the State unquestionably has power to tax the property of its political subdivisions in the absence of a constitutional provision forbidding such a tax.

"In *Commonwealth* v. *Richmond*, 116 Va. 69, at p. 77, 81 S. E. 69, L. R. A. 1915A, 1118, our court said:

■ " 'Judge Cooley, in his work on Taxation, (3rd ed.) pp. 263-4, said: "Before noticing the exemptions expressly made by law, it will be convenient to speak of some which rest upon implication. Some things are always presumptively exempted from the operation of general tax laws, because it is reasonable to suppose they were not within the intent of the legislature in adopting them. Such is the case with property belonging to the State and its municipalities, and which is held by them for governmental purposes. All such property is taxable, if the State shall see fit to tax it; but to levy a tax upon it would render necessary new taxes to meet the demand of this tax, and thus the public would be taxing itself, and no one would be benefited but the officers employed, whose compensation would go to increase the useless tax. It cannot be supposed that the legislature would ever purposely lay such a burden upon public property, and it is, therefore, a reasonable conclusion that, however general may be the enumeration of property for taxation, the property held by the State and by all its municipalities for governmental purposes was intended to be excluded, and the law will be administered as excluding it in fact." '

"In my opinion, the rule as above stated is applicable to such a tax as is here in question."

■ The general rule is that provisions exempting property of individuals or private corporations from taxation must be strictly construed, taxation of such property being the rule and exemption from taxation the exception. But, as the policy of the State has always been to exempt property of municipalities, in such cases exemption is the rule and taxation the exception. *Commonwealth* v. *Smallwood Memorial Institute*, 124 Va. 142, 97 S. E. 805.

In 51 Am. Jur., Taxation, sec. 557, it is said:

"Also as a general rule property owned by a State, county, municipal corporation or other local public body is exempt from taxation either as a matter of public policy or by specific constitutional or statutory provisions, provided it is devoted to uses public in their nature. When public property is involved, exemption is the rule and taxation the

exception. Public property is presumed to be exempt from the operation of general property tax laws. Tax statutes are construed not to embrace property of the government or its instrumentalities unless the legislative intention to include such property is plainly and clearly expressed. This immunity rests upon fundamental principles of government, being necessary in order that the functions of government shall not be unduly impeded, as well as for other reasons. To tax public property necessarily involves other taxation for the payment of the taxes so laid.

" 'Public property', as that term is used in provisions making public property exempt from taxation, in general, means property belonging either to the state or a political division thereof, such as a county, city, town, and the like, used exclusively for any public purpose".

And again, in section 562 of the same work, this is said:

"The rule of strict construction of tax exemption statutes and the general rule that tax exemptions cannot rest on implications have reference to private property, and not to property of municipal corporations, which is generally regarded as exempt from state taxation notwithstanding the absence of any provision either in the state constitution or in the general statutes granting such exemption. * * * This implied exemption can be overcome only by positive legislative enactment.

"The exemption of municipal property is based upon the inference that the legislature, having made no provision with respect to such property, did not intend that it should be taxed. * * * "

■■ No provision was made by the legislature either in sec. 3102 of the Code, or sec. 126 of the Tax Code, requiring a municipal corporation to pay a writ tax upon its actions and suits brought in courts, and, having made no such provision with respect to the same, it is presumed that it did not intend to require such a tax from municipalities. We are, therefore, of the opinion that the trial court was correct in refusing to dismiss the action because the city had failed to pay the writ tax.

It was next contended that the plaintiff in error was classified as a sales agent by the license inspector who was not an assessing officer, and that he could have been classified under any one of three classifications of the City Tax Code. We are not impressed with this contention. The testimony of the plaintiff in error himself was that he was a sales agent for nonresident principals for the City of Richmond and certain counties in Virginia. He was so classified and assessed by the Commissioner of the Revenue and not by the license inspector. Sec. 22 of chapter 10 of the City Tax Code clearly embraced his business and he was properly assessed thereunder.

Finally it was contended that the plaintiff in error was engaged in interstate commerce and therefore exempt from State and city taxation. In his petition for a writ of error he stated that "this court has had precisely the same question on this point before it on three occasions, as follows: *Christian Corp.* v. *Commonwealth of Virginia*, 315 U. S. 801, 62 S. Ct. 626, 86 L. Ed. 1201; *Stovall* v. *Commonwealth*, and *Stovall* v. *Richmond* (writs of error denied March Term, 1944, 182 Va., p. lviii); *Dunston* v. *Norfolk*, 177 Va. 689, 15 S. E. (2d) 86. In all of these cases this court was controlled by the decision in *McGoldrick* v. *Berwind-White Coal Min. Co.*, 309 U. S. 33, 60 S. Ct. 388, 84 L. Ed. 565, 128 A. L. R. 876." He then asserts that *McGoldrick* v. *Berwind-White Coal Min. Co.*, *supra*, was overruled by the later case of *McLeod* v. *Dilworth Co.*, 322 U. S. 327, 64 S. Ct. 1023, 88 L. Ed. 1304 (decided May 15, 1944). Unless this statement is true it would appear obvious that we should affirm the judgment in this case, for upon the facts the present case is similar to *Christian Corp.* v. *Commonwealth of Virginia*, *supra*, in which we denied a writ of error and the Supreme Court denied *a certiorari*—see 315 U. S. 801, 62 S. Ct. 626, 86 L. Ed. 1201; *Stovall* v. *Richmond*, *supra*, in which we denied a writ of error on March 14, 1944, and *Dunston* v. *Norfolk*, *supra*. In addition to those cases this case is also quite similar upon the facts to *Nippert* v. *Richmond*, *ante*, p. 689, 33 S. E. (2d) 206. In the latter case

Chief Justice Preston W. Campbell, speaking for the court, had this to say:

"Since the decision of the Supreme Court in *McGoldrick* v. *Berwind-White Coal Min. Co.*, 309 U. S. 33, 60 S. Ct. 388, 84 L. Ed. 565, 128 A. L. R. 876, the former views as to the freedom of interstate commerce from local taxation have been greatly modified. Following the doctrine announced in that case this court, in *Dunston* v. *Norfolk*, 177 Va. 689, 15 S. E. (2d) 86, held that the States have a right to require interstate commerce to bear its fair share of the cost of local government, notwithstanding the fact that the exercise of such right may, in some measure, affect the commerce or increase the cost of business."

Mr. Justice Spratley in *Dunston* v. *Norfolk, supra,* clearly analyzed the case of *McGoldrick* v. *Berwind-White Coal Min. Co., supra,* and applied the principles there announced to the *Dunston Case,* namely, that the States will not be denied the right to levy a tax upon interstate commerce merely because it is such commerce. In the *Dunston Case* such an exhaustive review of the later pertinent cases was made that they need not be again reviewed.

Did the decision in the case of *McLeod* v. *Dilworth Co., supra,* in effect, overrule the decision in the case of *Berwind-White Coal Min. Co., supra?* We think not. The facts in the *McLeod Case* are entirely different from those in the *Berwind-White Case.* In the *McLeod Case* the State of Arkansas sought to impose a sales tax upon goods sold and delivered in Tennessee. This tax was held invalid because it was a sale which took place outside of the jurisdiction of Arkansas. To have permitted the tax would have been to allow Arkansas to project its taxing powers beyond its own boundaries. The facts are clearly stated in the opinion as follows:

"The petitioners are Tennessee corporations with home offices and places of business in Memphis where they sell machinery and mill supplies. They are not qualified to do business in Arkansas and have neither sales office, branch plant nor any other place of business in that State. Orders

for goods come to Tennessee either through solicitation in Arkansas by traveling salesmen domiciled in Tennessee, or by mail or telephone. But no matter how the order is placed it requires acceptance by the Memphis office, and on approval the goods are shipped from Tennessee. Title passes upon delivery to the carrier in Memphis, and collection of the sales price is not made in Arkansas. In short, we are here concerned with sales made by Tennessee vendors that are consummated in Tennessee for the delivery of goods in Arkansas."

The Supreme Court upheld the decision of the Supreme Court of Arkansas denying the state the right to impose a sales tax. Speaking through Mr. Justice Frankfurter, it said:

"We agree with the Arkansas Supreme Court that the *Berwind-White Case* presented a situation different from this case and that this case is on the other side of the line which marks off the limits of state power. * * * The differentiations made by the court below between this case and the *Berwind-White Case* are relevant and controlling. 'The distinguishing point between the *Berwind-White Coal Case* and the cases at bar,' said the court below, 'is that in the *Berwind-White Coal Case* the corporation maintained its sales office in New York City, took its contracts in New York City and made actual delivery in New York City . . . ', [*McLeod* v. *Dilworth Co.*] 205 Ark. 780, at page 786, 171 S. W. (2d) 62, at page 65. This, according to practical notions of what constitutes a sale which is reflected by what the law deems a sale, constituted a sale in New York and accordingly we sustained a retail sales tax by New York. Here, as the Arkansas Supreme Court continued, 'the offices are maintained in Tennessee, the sale is made in Tennessee, and the delivery is consummated either in Tennessee or in interstate commerce with no interruption from Tennessee until delivery to the consignee essential to complete the interstate journey.' "

It was suggested, however, that the State of Arkansas could have levied a tax of the same amount on the *use* of the goods in Arkansas by the Arkansas buyers and that such

a *use* tax would not exceed the limits upon state power de-
rived from the United States Constitution. The Justice, in
disposing of this contention, said:

"Whatever might be the fate of such a tax were it be-
fore us, the not too short answer is that Arkansas has chosen
not to impose such a use tax, as its Supreme Court so em-
phatically found."

The Justice then distinguishes a sales tax from a use tax.
For the foregoing reasons the judgment is affirmed.

*Affirmed.*