# Richmond

## County Board of Arlington County, Virginia v. Arcade-Sunshine Company, Et Al.

March 7, 1955.

Record No. 4311.

Present, All the Justices.

The opinion states the case.

*William J. Hassan, David L. Carpenter* and *Peter J. Kostik*, for the appellant.

*Green, Trueax & Smoot*, for the appellees.

MILLER, J., delivered the opinion of the court.

Arcade-Sunshine Company and several other companies and individuals operating laundries and dry cleaning establishments in the city of Washington, District of Columbia (hereinafter called appellees) filed their petition against the County Board of Arlington.

The proceeding was instituted to have the court declare section 78 of the Business Privilege License Ordinance adopted by Arlington county, Virginia, on February 2, 1949, as amended October 18, 1952, unenforceable against appellees, and to obtain refund of taxes imposed and collected under the ordinance.

The petition is designated a "Petition for a declaratory judgment and relief" and appears to have been filed under the provisions of § 8-578, *et seq.*, Code of 1950. No objection was made to this procedure and the cause was proceeded in to final decree.

Section 78 of the ordinance follows:

"Every person, (other than a laundry or dry cleaning establishment located in the County of Arlington) engaged in soliciting and/or accepting clothing, rugs, or other fabrics to be cleaned, laundered, dyed or pressed for compensation, and/or delivering clothing, rugs or other fabrics which have been cleaned, laundered, dyed or pressed for compensation where said person does the actual laundry or dry cleaning work outside the County of Arlington or has any part of the dry cleaning, laundry or finishing work done outside the County of Arlington, shall pay $300.00 per annum for one

outlet (any office, store or vehicle) and $200.00 for each additional outlet per annum, not prorated."

By another section of the ordinance, conducting a business without paying the required license tax is made an offense punishable by fine or imprisonment.

In the petition it is charged that section 78 imposes an undue burden upon interstate commerce and is violative of the Commerce Clause of the Constitution of the United States, Article 1, section 8[1]. It is also alleged that the section constitutes local and special legislation repugnant to section 63 (5) and section 64 of the Constitution of Virginia.

The County Board denied that the license taxes imposed upon appellees for the activities engaged in by them in Arlington county constituted a burden upon interstate commerce and thus were violative of the Commerce Clause or that imposition of the tax violated sections 63 and 64 of the Virginia Constitution. It asserted that the ordinance merely levied a license tax for engaging in occupations and doing local business within the county of Arlington and contended that the classification made for tax purposes was neither arbitrary, discriminatory nor special legislation.

During the trial appellees abandoned their allegation that the ordinance was violative of the Virginia Constitution, and the cause proceeded upon the sole legal issue of whether or not imposition of the taxes was repugnant to the Commerce Clause of the Constitution of the United States.

After an *ore tenus* hearing of the evidence bearing upon appellees' activities in Arlington county, the court declared the ordinance as enforced against them violative of the Commerce Clause of the United States Constitution. From a decree of January 25, 1954, putting that finding and declaration into effect and ordering a refund to appellees of the taxes collected from them, the County Board appealed.

The following facts were established:

---

[1] The Congress shall have the power "* * * To regulate commerce with foreign nations, and among the several states, and with the Indian Tribes;"

Appellees are engaged in the laundry and cleaning business and maintain their plants and offices in the city of Washington, D. C. Each operates one or more trucks which leave the plants in Washington each morning and pick up clothing and soiled household articles from a list of regular customers in Arlington county. The trucks return the same day to Washington with the articles which are there cleaned and processed for redelivery to the customers in Arlington county. Each morning that the trucks leave the plants in Washington, the clean laundry and articles that have been processed are transported and delivered to the individual customers at their homes in Arlington county. Upon delivery of the processed goods, fees for the service rendered are collected from the customers. These trucks in their daily delivery of processed articles and their collection of soiled goods to be cleaned or laundered pursue a regular route, but at times the drivers solicit new patrons within the county of Arlington.

Two of the appellees, Bergmann's, Inc., and Elite Laundry Company of Washington, D. C., Inc., hereinafter called Elite Laundry Company, Inc., also maintain one or more branch outlets in the county of Arlington which they operate as delivery and pick-up stores or stations. Soiled articles that customers desire processed are left with appellees' employees on duty at the stations. Trucks then haul the soiled articles from the stations to the plants in Washington where they are processed and returned to the local stations in Arlington. These stations are kept open each week day during regular hours and serve as local establishments to and at which regular customers deliver, secure and pay for their articles that are processed in Washington.

The taxes or license fees provided for in section 78 were imposed for each truck regularly used and operated in Arlington county to pick up and deliver articles to be cleaned or processed in Washington. The county also levied the license tax against Bergmann's, Inc., and Elite Laundry Company, Inc., for each pick-up station main-

tained and operated by those companies in Arlington county.

It will be observed that Article 1, section 8, empowers Congress to regulate commerce among the several states, foreign nations and Indian tribes. Literally, commerce flowing between Arlington'county, Virginia, and the city of Washington, District of Columbia, cannot be said to be commerce between *states*. Yet by the Commerce Clause, Congress was expressly granted the right and power to regulate commerce among the states, and we construe its purpose and scope as encompassing the flow of commerce across a state line into the District of Columbia. Cooke, *Commerce Clause of the Federal Constitution*, § 28, p. 58; *Stoutenburgh* v. *Hennick*, 129 U. S. 141, 9 S. Ct. 256, 32 L. ed. 637; *District Grocery Stores, Inc.* v. *District of Columbia*, 24 F. Supp. 447.

"In a word, it may be said, that in the matter of interstate commerce the United States are but one country, and are and must be subject to one system of regulations, and not to a multitude of systems." *Robbins* v. *Shelby County Taxing District*, 120 U. S. 489, 7 S. Ct. 592, 30 L. ed. 694.

The challenged section of the ordinance does not involve the exercise of the police power. It is solely intended as a revenue raising measure. In short, no regulatory powers of a state are questioned. This being true, we are relieved of the burden of taking into account those factors that would have to be considered in determining whether or not the legislation infringed upon the Commerce Clause if it were designed in part to make operative the state's police power. Hartman, *State Taxation of Interstate Commerce*, pp. 41, 42; *Freeman* v. *Hewit*, 329 U. S. 249, 253, 67 S. Ct. 274, 91 L. ed 265.

Appellees contend that operation of trucks or stations in Arlington county to effect the collection and transportation of goods to Washington where they are processed and then transported by trucks back to Arlington where redelivery is made to the customer directly by the driver or by employees at the station outlets is, in either method

employed, a complete and inseparable movement and flow of goods in interstate commerce.

On the other hand, the County Board asserts that the business activities in Arlington are purely local and factually similar to door to door sale and delivery of goods within the county. It is claimed that appellees sell and deliver a completed laundry service to each customer at his door. The Board's position is stated thus:

"If the consummation of a transaction is an event which takes place within a State and this event is separate and distinct from the interstate movement of the goods and interstate movement has ended, then, the state has ample grounds for imposing a tax on the event. * * *

"The laundry and dry cleaning in the present case is done in Washington, D. C., and transported to Arlington, Virginia. There the interstate movement ends. It is then delivered to the customer in Arlington. This is when the sale of the service is consummated. It is an event separate and distinct from the shipment of soiled clothes into Washington and the return of the same clothes cleaned to Arlington. * * *"

It is then argued that local door to door picking up and delivery of goods by truck to customers and receipt and delivery of goods through stations maintained in the county, and payment within the county in each instance for the service rendered are all incidents that are purely local in nature and constitute "the business of peddling a completed laundry service in Arlington." Both of these modes of service, *i.e.*, by truck or through local stations, are contended to be incidents clearly apart from the transportation to and from, and the processing of, the goods in, Washington and are thus said to be subject to imposition of local privilege taxes.

The legal principles announced in *Caskey Baking Company, Inc.* v. *Virginia*, 313 U. S. 117, 61 S. Ct. 881, 85 L. ed. 1223; *Wagner* v. *City of Covington*, 251 U. S. 95, 40 S. Ct. 93, 64 L. ed. 157; *Emert* v. *Missouri*, 156 U. S. 296, 15 S. Ct.

367, 39 L. ed. 430; *Browning* v. *City of Waycross*, 233 U. S. 16, 34 S. Ct. 578, 58 L. ed. 828; *McGoldrick* v. *Berwind-White Coal Mining Co.*, 309 U. S. 33, 60 S. Ct. 388, 128 A. L. R. 876, 84 L. ed. 565; *International Harvester Co.* v. *Department of Treasury of State of Indiana*, 322 U. S. 340, 64 S. Ct. 1019, 88 L. ed. 1313; and *Dunston* v. *City of Norfolk*, 177 Va. 689, 15 S. E. (2d) 86, are relied upon to support the validity of the tax.

In the *Caskey* case the statute under which the challenged tax was levied provided for imposition of "an annual State license tax on every person, firm and corporation * * * who or which shall peddle goods, wares or merchandise by selling and delivering the same at the same time to licensed dealers or retailers at other than a definite place of business operated by the seller."

The company, upon which the challenged tax was imposed, maintained its plant in West Virginia, where it made and baked bread. Through the use of its trucks and drivers, it transported bread into Virginia and there served fixed customer routes at regular intervals. The truck drivers called only upon regular customers, inquired of each as to how much bread was wanted and when appraised of the customer's needs, filled each order thus obtained by taking the bread from the truck and delivering it to the customer. Each transaction was factually, a sale and delivery of bread in Virginia to a regular customer upon a certain route.

In holding that the statute as applied to this factual situation did not contravene the commerce clause of the federal Constitution and that the activity engaged in by the baking company in Virginia was subject to be licensed and taxed, the court said:

"While the transportation of bread across the state line is interstate commerce, that is not the activity which is licensed or taxed. The purely local business of peddling is what the Act hits, and this irrespective of the source of the goods sold. It is settled that such a statute imposes no

burden upon interstate commerce which the Constitution interdicts." At page 119.

"Nor is taxation of a local business or occupation which is separate and distinct from the transportation or intercourse which is interstate commerce, forbidden merely because in the ordinary course such transportation or intercourse is induced or occasioned by such business, or is prerequisite to it." *McGoldrick* v. *Berwind-White Coal Mining Co., supra,* at page 47.

The other cases listed above and relied upon by the County Board are quite similar in import to the holding in the *Caskey* case.

Appellees earnestly insist that the facts in the decisions cited by the County Board are materially different from those here established. This, they say, is true because in the *Caskey Baking Company* decision and others of similar effect, there is found a factually distinct incident of local activity (often a sale and delivery) actually separate and apart from the flow of the goods in interstate commerce which activity or incident furnishes the fulcrum for the local privilege tax.

*Nippert* v. *City of Richmond,* 327 U. S. 416, 66 S. Ct. 586, 162 A. L. R. 844, 90 L. ed. 760, is cited as decisive of the rule that mere mental severance and segregation of an incident of the over-all movement of goods in commerce simply because such incident occurs within the taxing state is an insufficient basis upon which to found a tax. There must be factual separation.

"If the only thing necessary to sustain a state tax bearing upon interstate commerce was to discover some local incident which might be regarded as separate and distinct from 'the transportation or intercourse which is' the commerce itself and then to lay the tax on that incident, all interstate commerce could be subjected to state taxation and without regard to the substantial economic effects of the tax upon the commerce. For the situation is difficult to think of in which some incident of an interstate transaction taking

place within a state could not be segregated by an act of mental gymnastics and made the fulcrum of the tax. All interstate commerce takes place within the confines of the States and necessarily involves 'incidents' occurring within each state through which it passes or with which it is connected in fact. And there is no known limit to the human mind's capacity to carve out from what is an entire or integral economic process particular phases or incidents, label them as 'separate and distinct' or 'local,' and thus achieve its desired result." At page 423.

In *Davis v. Virginia*, 236 U. S. 697, 698, 35 S. Ct. 479, 59 L. ed 795, we find this principle emphasized and practically applied:

"The court below thought that the purchase of the frames was to be regarded as a separate transaction occurring wholly in Virginia. Whether or not this was its technical aspect as an executed contract, it often has been pointed out that commerce among the States is a practical not a technical conception. The preliminary contract bound the Company to furnish a chance to take a frame with the portrait. Obviously it was contemplated that the frames would be sent from New York as well as the pictures, as in practice they were, and although the bargain was not complete until the Company's offer was accepted in Virginia, the furnishing of the opportunity was a part of the interstate transaction. From the point of view of commerce the business was one affair."

Alike on principle is *State v. Mobley*, 234 N. C. 55, 66 S. E. (2d) 12.

"There must be a point of time when they [taxed logs] cease to be governed exclusively by the domestic law and begin to be governed and protected by the national law of commercial regulation, and that moment seems to us to be a legitimate one for this purpose, in which they commence their final movement for transportation from the state of

U. S. 517, 525, 6 S. Ct. 475, 29 L. ed. 715. Hartman, *State Taxation of Interstate Commerce,* p. 99, *et seq.*

The mode of doing business by the company and the facts proved in the recent case of *Memphis Steam Laundry v. Stone, Chairman State Tax Commission,* 342 U. S. 389, 72 S. Ct. 424, 96 L. ed. 436, were almost identical with the manner in which these appellees operated their trucks in interstate commerce. There also the challenged section of the state statute[1] under which the questioned licensed tax was imposed was quite similar to section 78 of the Arlington county ordinance. The laundry company maintained its plant in Memphis, Tennessee, and to serve patrons in eight nearby counties in Mississippi, sent ten trucks into that state "where its drivers pick up, deliver and collect for laundry and dry cleaning and seek to acquire new customers." After paying the demanded $500 tax to operate the ten trucks and so avoid the penalties imposed for violation of the statute, the company sued for refund in a state court. It asserted that the law as applied to its operation of the trucks was violative of the commerce clause of the federal Constitution. Judgment was for the company, but that

---

[1] Sec. 3. Every person desiring to engage in any business or exercise any privilege hereafter specified shall first, before commencing same, apply for, pay for, and procure from the state tax commissioner or commissioner of insurance, a privilege license authorizing him to engage in the business or exercise the privilege specified therein, and the amount of tax shown in the following sections is hereby imposed for the privilege of engaging or continuing in the business set out therein.

Sec. 45. Upon each person doing business as a transient vendor, or dealer, as defined in this section, and upon which a privilege tax is not specifically imposed by another section of this act, a tax for each county according to the following schedules:

    *     *     *     *     *     *

(t) Upon each person soliciting business for a laundry not licensed in this state as such, in each county..................................$50.00

    *     *     *     *     *     *

(y) Provided however, that where any person subject to the payment of the tax imposed in this section, makes use of more than one vehicle in carrying on such business, the tax herein imposed shall be paid on each vehicle used in carrying on such business.

judgment was reversed by the Supreme Court of Mississippi. It held that appellant's drivers were "transient vendors or dealers" and that imposition of the tax upon appellant did not violate the commerce clause.

In reversing this decision of the Mississippi court, Chief Justice Vinson said:

"It would appear from portions of the opinion of the court below that the tax is laid upon the privilege of soliciting interstate business on the theory that solicitation of customers for interstate commerce is a local activity subject to state taxation. However, the opinion below may also be read as construing the statutory term 'soliciting' more broadly, thereby resting the tax upon appellant's activities apart from soliciting new customers in Mississippi, namely the pick up and delivery of laundry and cleaning on regular routes within the State. Each construction of the statute raises different considerations. But clarification of the operating incidence of the tax is not required for disposition of this case since we find that the tax violates the Commerce Clause under either reading of the statute.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

"To sum up, we hold that the tax before us infringes the Commerce Clause under either interpretation of the operating incidence of the tax. The Commerce Clause created the nationwide area of free trade essential to this country's economic welfare by removing state lines as impediments to intercourse between the states. The tax imposed in this case made the Mississippi state line into a local obstruction to the flow of interstate commerce that cannot stand under the Commerce Clause." (At pages 392, 395.)

Certainly the transportation by truck of these goods across the state line to be processed in Washington, the accomplishment of that purpose and the retransportation of the goods into Virginia constitute interstate commerce. That being true, however ingenious be the attempt to treat the picking up of soiled articles and their redelivery as laun-

dered articles as a completely local business, and so sever it from the movement of the goods in interstate commerce as to create a local taxable incidence, that result cannot be accomplished without materially affecting and burdening interstate commerce.

This ingenious mental severance and creation of a local taxable business incidence out of the picking up and redelivery of the goods, separate from the over-all interstate commerce in which the goods are the subject matter, are purely fictional. It has no basis in fact or reality, for the picking up and redelivery constitute respectively the *alpha* and *omega* of the flow of the goods in interstate commerce, and nothing more. The pick-up and delivery are actual and direct physical parts of the interstate movement. Hartman, *State Taxation of Interstate Commerce*, p. 49. They furnish no separate taxable incident or event upon which a local tax may be levied. *Railway Express Agency* v. *Virginia*, 347 U. S. 359, 74 S. Ct. 558, 98 L. ed. 757.

Thus we hold that imposition of taxes for the operation of the respective trucks was unwarranted and that their refund was properly decreed.

However, the maintenance and operation by Bergmann's, Inc., and Elite Laundry Company, Inc., of local pick-up stations is factually distinct from the operation of the trucks. Yet those appellees argue that as no sale or change in the ownership of goods is made as in peddler cases, and as the maintenance of the stations is to facilitate the flow of goods in interstate commerce, their operation thus constitutes an integral and inseparable part of interstate commerce, and the same principle applicable to operation of the trucks should control.

With this we do not agree. The stations are locally operated by these appellees to enhance and better their business status and competitive positions in the county. In them the goods come to rest and their maintenance and operation are not necessary to or an integral part of the interstate commerce in which appellees engage. Operation of

the stations by the local employees clearly constitutes a factually distinct business activity separate from the movement in commerce of the goods there collected and distributed.

The taxes imposed upon these two appellees for operating their stations are not levied upon interstate commerce or upon the privilege to engage in interstate commerce. They are imposed upon the privilege of engaging in a separate local business.

There is no claim of discrimination against interstate commerce and merely because imposition of the taxes may incidentally affect interstate commerce, that, without more, does not render its levy unlawful. *Dunston* v. *City of Norfolk, supra.* Refund to appellees of the taxes imposed for operation of the stations was not required or warranted.

We were informed at bar that subsequent to entry of the final decree of January 25, 1954, but prior to perfection of appeal to this court, the treasurer of Arlington county was required to make refund of the taxes to appellees in accordance with the mandate of the decree. The license taxes that were imposed and collected by the county for operation of appellees' trucks, we hold to have been properly refunded to appellees. But the taxes imposed and collected by the county from Bergmann's, Inc., and Elite Laundry Company, Inc., for operation of the station outlets, not being in contravention of the Commerce Clause, were not refundable to those two appellees. Thus the decree appealed from is affirmed in part and reversed in part, and this cause will be remanded to the trial court with direction that it enter a decree requiring Bergmann's, Inc., and Elite Laundry Company, Inc., of Washington, D. C., to repay to the treasurer of Arlington county the license taxes imposed for operation of the pick-up stations, heretofore paid and refunded to them by the treasurer.

*Affirmed in part; reversed in part, and remanded.*