# Richmond

AMERICAN AIRLINES, INC. v. MARION S. BATTLE,
DIRECTOR OF THE DIVISION OF MOTOR VEHICLES, ET AL.

January 18, 1943.

Record No. 2599.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston
and Spratley, JJ.

The opinion states the case.

*Henry I. Stimson* (New York, N. Y.), *R. Carter Scott, Jr., Pruitt, Hale, McIntyre & Coursen* (New York, N. Y.) and *Peyton, Beverley, Scott & Randolph,* for the plaintiff in error.

*Abram P. Staples, Attorney General,* and *Edwin H. Gibson* and *W. W. Martin, Assistant Attorneys General,* for the defendants in error.

SPRATLEY, J., delivered the opinion of the court.

American Airlines, Inc., a Delaware corporation, brought this proceeding to test the right of the Commonwealth of Virginia to retain the sum of three cents per gallon on gasoline purchased for use in propelling its aircraft within the borders of Virginia while engaged exclusively in interstate operations. It asks for a mandamus requiring the Director of Motor Vehicles to refund to it the sum of $6,224.70, representing taxes paid at the time of the purchase of such gasoline, for which a claim has been duly filed, or in the alternative, for a declaratory judgment of its right to such refund. No objection has been made to the form of the proceeding, nor is the amount of the claim disputed.

The plaintiff is the holder of a number of Certificates of Public Convenience and Necessity, issued by the Civil Aeronautics Authority of the United States of America, authorizing it to engage in air transportation with respect to persons, property, and mail on any "air lanes or airways" across various States of the United States. These certificates cover routes numbered 23 and 25, which extend across

Virginia from other States. One of these is a transcontinental route which extends from Albany, New York, to Fort Worth, Texas, via certain intermediate points, including Washington, D. C. The other extends between the terminal point, Washington, D. C., and the terminal point, Chicago, Illinois, via certain intermediate points. The plaintiff is an air carrier as defined in the Civil Aeronautics Act of 1938, as amended, and is a common carrier and engaged in interstate air transportation as defined in that Act with respect to persons, property, and mail across Virginia on the two routes named. Title 49, U. S. C. A., section 401, *et seq.*

The plaintiff has not engaged in intrastate commerce within the State of Virginia during the period from June 22, 1940, to February 28, 1941, the particular period covered by the allegations of its petition. In its interstate operations, it served Washington, D. C. and its immediate vicinity by scheduled stops at the Washington-Hoover Airport, located in this State, near the City of Washington. That airport was the only place in Virginia at which its airplanes landed and took off in their interstate operations.

During the period involved, the plaintiff purchased in Virginia and consumed within the borders of the State of Virginia, in its aircraft engaged solely in interstate operations 207,490 gallons of gasoline, upon which it paid the Virginia State tax of five cents upon each gallon as a part of the purchase price at the time of the purchase. None of this gasoline was consumed in aircraft engaged in trips begun and ended in Virginia, but in trips begun and ended in different States. It was used or consumed, however, in flights over and across the borders of Virginia.

The plaintiff, during the same period, purchased and paid the State tax upon gasoline purchased in Virginia and consumed in its small "trainer" or "inspection" planes used for flight pilot training and the survey and inspection of airports, emergency landing fields, night lights for airplane flying, and airfield facilities of airports in Virginia. These flights were wholly intrastate, that is, within the borders of the State of Virginia, and the plaintiff makes no claim

for a refund of the three cents per gallon of gasoline consumed by its airplanes in such flights.

The plaintiff, in proper time and in due form, made a demand upon the Director of the Division of Motor Vehicles of Virginia for a refund of five cents on each of the 207,490 gallons so purchased by it and used within the borders of Virginia. The Director refunded the sum of $4,149.80 at the rate of two cents per gallon; but refused to refund the sum of $6,224.70, representing the remaining three cents of the tax. It is conceded that if the plaintiff is entitled to recover, it is entitled to that amount.

The first question is whether chapter 71 of the Acts of Assembly of 1940\*, by its express terms of intendment, imposed a tax of three cents per gallon on gasoline purchased by plaintiff in Virginia and used in propelling its aircraft over, above, and within the borders of Virginia during an exclusively interstate operation in interstate commerce.

---

\*Chap. 71.—"*An ACT to amend and re-enact an act entitled, 'An Act to provide for the creation of a division of the State Corporation Commission, to be known as Division of Aeronautics, \* \* \* ; to impose taxes upon gasoline purchased in the State and used for propelling airplanes and other aircraft operated intrastate; to provide for payment into a special fund of all gasoline taxes, \* \* \* , for the construction, maintenance and improvement of airports and landing fields, to which the public shall have access, with the cooperation of the State Highway Department, or otherwise as may be determined, and for the promotion of aviation in the interest of operators and in the interest of the public; and to appropriate funds for the aforesaid purposes,' approved March 31, 1938, so as to make the act apply to both intrastate and interstate commerce. Approved February 22, 1940.* (H B 52)

"1. Be it enacted by the General Assembly of Virginia, That an act entitled, 'An Act to provide for the creation of a division of the State Corporation Commission, to be known as Division of Aeronautics, as means for the administration, by the State Corporation Commission, of the functions hereby, heretofore, or which may hereafter be, conferred upon the commission for the licensing of airports, air pilots, et cetera, and for the promotion of aviation in the public interest; to impose taxes upon gasoline purchased in the State and used for propelling airplanes and other aircraft operated intrastate; to provide for payment into a special fund of all gasoline taxes, to the extent of the tax imposed by this law, \* \* \* , for the construction, maintenance and improvement of airports and landing fields, to which the public shall have access, with the cooperation of the State Highway Department, or otherwise as may be determined, and for the promo-

What is the meaning of the language contained in section 2 of the statute? "That there be, and hereby is, imposed, and hereby required to be paid, through medium of deduction from refunds as now required by law, * * * a tax of three cents on each gallon of gasoline purchased in this State for use and used by intrastate operators in the propulsion of airplanes or any kind of aircraft; and a tax of three cents on each gallon of gasoline purchased in this State for use and used by *interstate operators in the propulsion of airplanes or any kind of aircraft in intrastate operations and within the borders of the State of Virginia*, the amount of tax to be based on the flight logs of each trip and average consumption of gasoline per hour per month." (Italics supplied.)

The difficulty, if any, is not in the meaning of the several words, but in the phrasing of the words, that is, in the two phrases "interstate operators in the propulsion of airplanes or any kind of aircraft in intrastate operations," and "and within the borders of the State of Virginia."

■ ■ The common and accepted meaning of intrastate means "within" or "on the inside." An "intrastate operation" is that operation which during its whole course of

---

tion of aviation in the interest of operators and in the interest of the public; and to appropriate funds for the aforesaid purposes,' approved March thirty-first, nineteen hundred and thirty-eight, be amended and re-enacted so as to read as follows:

"Section 1. That the State Corporation Commission be, and it hereby is, authorized to create and organize a division of the said commission to be known as Division of Aeronautics, ˮ * * , for the promotion of aviation in the interest of the public, under such rules and regulations of an administrative character as may be from time to time prescribed and adopted by administrative orders and/or by administrative practices.

"Section 2. That there be, and hereby is, imposed, and hereby required to be paid, through medium of deduction from refunds as now required by law, or directly if and when there shall be any change in the law which constitutes the provisions herein for retention of said portion of refundable gasoline taxes no longer applicable, a tax of three cents on each gallon of gasoline purchased in this State for use and used by intrastate operators in the propulsion of airplanes or any kind of aircraft; and a tax of three cents on each gallon of gasoline purchased in this State for use and used by interstate operators in the propulsion of airplanes or any kind of aircraft in intrastate operations and within the borders of the State of Virginia, the amount of tax to be based on the flight logs of each trip and average consumption of gasoline per hour per month.

flight or transportation is within the jurisdiction and confines of a single State.

An "interstate operator" of airplanes may be engaged in both intrastate and in interstate operations. His interstate operations include continuous flights from one State to another State. For a part of such interstate journeys the planes are propelled within the borders of each State over which they fly.

The two phrases are in the conjunctive, being joined by the word "and." If only interstate operators engaged in intrastate operations were intended to be covered, there would be no occasion to use the second phrase "and within the borders of the State of Virginia," because all intrastate operations are within the borders of one State. Giving effect to both phrases, as we are required to do, they embrace gasoline purchased for use and used by interstate operators both in their intrastate operations and in so much of their interstate operations as take place "within the borders of the State of Virginia."

There is no question of the tax liability on interstate operators engaged in intrastate operations. The plaintiff, an

---

"Section 3. That the Director of the Division of Motor Vehicles be, and he hereby is, directed, upon demand for refund of gasoline taxes paid by any operator of airplanes or other aircraft, to pay at the rate of three cents a gallon for each and every gallon upon which there is a right of refund and refund is being made, into the treasury, as a special fund, to be disbursed upon order of the State Corporation Commission for the purposes as herein provided; but such deductions and payments as to interstate operators shall be made only as to gasoline purchased in this State for use and used by such interstate operators in the propulsion of airplanes or aircraft in intrastate operations and within the borders of the State of Virginia, the computation thereof to be based on the flight logs of each trip and average consumption of gasoline per hour per month. In addition to the funds derived from the tax herein imposed, the director of the Division of Motor Vehicles shall pay annually into the special fund herein provided for, from funds derived from the State tax on motor fuel, the sum of ten thousand dollars, to be disbursed on order of the State Corporation Commission for the purposes herein provided, * * * .

"Section 4. * * * .
"Section 5. * * * .
"Section 6. * * * .
"Section 7. * * * ."

interstate carrier or operator, recognized this as it applied to its operations exclusively intrastate by paying, without protest, the tax on gasoline consumed in its airplanes in purely intrastate flights,—the flights of its "trainer" planes from one airfield to another airfield within this State.

In addition to the meaning of the language itself, there are two other reasons to support our conclusion. The last clause of section 2 of the 1940 Act provides that "the amount of tax to be based on the flight logs of each trip and average consumption of gasoline per hour per month." No such provision is necessary for intrastate flights for, in such flights, the measurement can be made from the tanks. That the measurement of gasoline used on interstate flights, within the borders of a state, can be readily made in the manner prescribed by the statute is shown by the claim of the plaintiff for a refund, made by the method prescribed. This added provision of measurement would not be necessary if the 1940 Act only reached intrastate commerce, as did the 1938 Act, which included no such provision.

To adopt the view of the plaintiff would be to say that the amendment of the 1938 Act, by the 1940 Act, made no change in the 1938 Act, and that the latter Act was wholly ineffective and futile. If the language of the 1940 Act itself and its stated purposes manifest a different intention, we must give effect to it.

Lest there be doubt that the statute expresses the meaning we have given to its language, we may resort under settled rules for the interpretation of statutes, to the history of the statute and to the processes of its enactment to ascertain the legislative intent. If the legislative purpose is thereby revealed, it is our duty to give it such reasonable construction as will, if possible, effect its purpose rather than one which will defeat it. *Simpson* v. *Simpson*, 162 Va. 621, 175 S. E. 320, 94 A. L. R. 909, and cases cited; 25 R. C. L., Statutes, sections 221 and 222; 59 C. J., Statutes, sections 569, 570 and 571.

The Motor Fuel Tax Act of Virginia, chapter 212, Acts of Assembly, 1932, page 389 (Michie's Code of Virginia,

1936, section 2154, subsections 209 to 229), imposed a tax of five cents a gallon on all gasoline "sold and delivered or used in this State" for the purpose therein specified; but expressly allowed a refund of the entire tax on all gasoline purchased and "actually used for operating or propelling boats, ships, airplanes or aircraft," whether such airplanes were engaged in interstate or intrastate commerce or operations.

The Act of 1932 was amended by chapter 368 of the Acts of Assembly, approved March 31, 1938. The amending Act provided for the establishment of a Division of Aeronautics within the State Corporation Commission, charged with administration of all aeronautical laws. It also provided for the creation of a "special fund," into which fund there should be paid "a tax of three cents on each gallon of gasoline purchased in this State for use and used by intrastate operators in the propulsion of airplanes or any kind of aircraft." This three cents per gallon was deducted from the five cents per gallon paid at the time of the purchase, and the purchaser, the intrastate operator, was entitled to receive, on demand and upon due application, a refund of the remaining two cents of the original tax. Thus, intrastate operators of airplanes paid a three cents tax on each gallon. In effect, no tax was paid by an interstate operator on gasoline used in aircraft engaged in interstate commerce or operations, irrespective of the territory over which it was consumed, since the whole of the tax paid at the time of its purchase was refundable to the purchaser.

On January 18, 1940, at the 1940 session of the General Assembly, there was introduced a bill, known as House Bill No. 52, undertaking to amend and re-enact the Act of 1938. This bill, as introduced, made the following additions to and changes in the 1938 Act: It added to its title the following words, *"so as to make the Act apply to both intrastate and interstate commerce."* It eliminated the word *"intrastate"* before the word "operators," in the next to the last line of section 2 of the 1938 Act, so that the section in the bill read *"That there * * * is imposed a tax of three*

cents on each gallon of gasoline purchased in this State for use and used by operators in the propulsion of airplanes or any kind of aircraft." It also eliminated the word "intrastate" before the word "operator" in the third line of section 3 of the 1938 Act, so that the bill read: "*That the Director of the Division of Motor Vehicles be, and he hereby is, directed, upon demand for refund of gasoline taxes paid by any operator of airplanes or other aircraft, to pay at the rate of three cents a gallon for each and every gallon upon which there is a right of refund and refund is being made, into the Treasury, as a special fund, to be disbursed upon order of the State Corporation Commission for the purposes as herein provided.*"

This bill, however, was not enacted as introduced. The House Committee on Finance amended the bill by putting back the word "*intrastate*" in section 2 as it appeared in the 1938 Act, and by placing a semicolon in the place of a period after the word "aircraft," the last word in section 2 of the 1938 Act and adding the following:

"*and a tax of three cents on each gallon of gasoline purchased in this State for use and used by interstate operators in the propulsion of airplanes or any kind of aircraft in intrastate operations and within the borders of the State of Virginia, the amount of tax to be based on the flight logs of each trip and average consumption of gasoline per hour per month.*"

The bill was then favorably acted upon by the Senate and the House of Delegates and sent to the Governor of Virginia for his approval. The Governor returned the bill without his approval, and suggested, for the purpose of consistency, that the bill be further amended by changing the period to a semi-colon after the word "provided" on page 5, line nine of section 3 of the 1938 Act and by inserting the following:

"*But such deductions and payments as to interstate operators shall be made only as to gasoline purchased in this State for use and used by such interstate operators in the propulsion of airplanes or aircraft in intrastate operations*

*and within the borders of the State of Virginia, the compu-
tation thereof to be based on the flight logs of each trip and
average consumption of gasoline per hour per month."*

The bill, with the foregoing amendments, was enacted into
law as chapter 71 of the Acts of Assembly, 1940, page 102
(Michie's Code, 1938, Supplement, section 3775(o) to (s) ).

It must be obvious that the purpose of House Bill No. 52,
both from the addition to its title and the elimination of
the word "intrastate" twice from the 1938 Act was to make
the tax applicable to all gasoline purchased in this State for
use by the operators of airplanes whether used in intrastate
or interstate commerce and whether consumed in Virginia
or elsewhere.

It is further manifest that the General Assembly, by its
acceptance of the amendments enacted in the bill, did not
care to make the Act that broad. It did, however, increase
the scope of the tax from that specified in the 1938 Act,
that is, from its applicability to gasoline used by "intrastate
operators" to include both "intrastate operators" and "inter-
state operators" in the propulsion of airplanes or any kind
of aircraft in interstate operations and within the borders of
the State of Virginia.

This review of the legislation confirms our conclusion
that chapter 71 of the Acts of 1940 imposed and was in-
tended to impose a tax of three cents per gallon on gasoline
sold in Virginia and used in propelling aircraft inside the
State of Virginia, although such aircraft was to be operated
exclusively in interstate commerce.

Further shedding light on the legislative intent, is the
action of the General Assembly of 1942, taken during the
pendency of this appeal. The 1932 Act, as amended, was
further amended by chapter 206 of Acts of Assembly of
1942, page 259, approved March 13, 1942. In addition to
certain other changes and additions, this Act contained the
following provision:

" * * * that a refund of two cents per gallon on all
motor fuel purchased within the State and consumed in aero-
planes or aircraft in flights over and within the boundaries

of this State shall be made, and a refund of the full tax paid shall be made on all motor fuel purchased in this State and consumed in aeroplanes or aircrafts in flights outside the boundaries of the State, the quantities consumed within and without the State to be determined by the flight logs of each trip and the average consumption of motor fuel per hour per month by each aeroplane or aircraft, * * * ."

By another Act, chapter 355 of the Acts of Assembly of 1942, approved April 1, 1942, chapter 368 of the Acts of 1938, as amended, was repealed in its entirety.

The plaintiff next contends that if the statute does levy a tax on gasoline purchased in Virginia and used in its aircraft engaged in interstate commerce, the Act is in violation of the provisions of the Federal Constitution relating to such commerce. The specific ground assigned is that the tax is not on the sale, purchase, storage or withdrawal of gasoline used or consumed in interstate commerce but is a "use" tax which directly burdens such commerce.

The flaw in plaintiff's contention is the assumption that the tax is a "use" tax. The statute does not levy a tax for the "use" of gasoline in the propulsion of airplanes. No such construction has been placed upon it so far as we are advised by State officials charged with its enforcement. As the Attorney General for the Commonwealth, representing the defendants, points out: No tax is paid in Virginia upon gasoline purchased outside of Virginia, although such gasoline may be used in flights in or over this State. If the tax was upon the "use" of gasoline, it would be immaterial where the gasoline was purchased for computing the tax.

The Motor Vehicle Fuel Tax Act (Acts 1932, page 389) levies a tax of five cents per gallon on gasoline sold in Virginia, to be paid at the time of purchase. The effect of the 1940 Act is to levy a three cents tax per gallon which is collected out of refunds to which operators of aircraft would be otherwise entitled under the Motor Vehicle Fuel Tax Act. The tax itself, paid at the time of purchase, is on the purchase, based on the gallonage. The use or con-

sumption of that gasoline in the propulsion of aircraft is the classification of the gasoline upon which the tax is paid.

In its brief, the plaintiff states:

"That the State of Virginia may levy an excise tax upon a given commodity and that she may tax it in any manner she sees fit (so long as the tax is not arbitrarily discriminatory) is freely admitted by us. Hence, we concede that the State of Virginia has the power to tax the sale or purchase, the ownership, the possession, the storage, the withdrawal at the time of withdrawal, of gasoline, and that the mere fact that certain gasoline is thereafter used in interstate commerce is immaterial and is no good reason for invoking the protection of the Commerce Clause of the Federal Constitution."

This concession is supported by cases from the Federal and State courts, which have recently greatly broadened the conception of the permissible State taxation of interstate commerce, on the general theory that where there is no practical or potential discrimination, there is no reason why interstate as well as intrastate commerce should not pay its own way. *Dunston* v. *Norfolk*, 177 Va. 689, 15 S. E. (2d) 86; *Nelson* v. *Sears, Roebuck & Co.*, 312 U. S. 359, 61 S. Ct. 586, 85 L. Ed. 888, 132 A. L. R. 475; *Western Live Stock* v. *Bureau of Revenue*, 303 U. S. 250, 58 S. Ct. 546, 82 L. Ed. 823, 115 A. L. R. 944; *McGoldrick* v. *Berwind-White Coal Min. Co.*, 309 U. S. 33, 60 S. Ct. 388, 84 L. Ed. 565, 128 A. L. R. 876.

In *Edelman* v. *Boeing Air Transport*, 289 U. S. 249, 53 S. Ct. 591, 77 L. Ed. 1155, Mr. Justice Stone, now Chief Justice Stone, said:

"A State may validly tax the 'use' to which gasoline is put in withdrawing it from storage within the State, and placing it in the tanks of the planes, notwithstanding that its ultimate function is to generate motive power for carrying on interstate commerce. Such a tax can not be distinguished from that considered and upheld in No. 176, *Nash., C. & St. L. R. Co.* v. *Wallace, supra* (288 U. S. 249, [53 S. Ct. 345] 77 L. Ed. 730) [87 A. L. R. 1191]. There it was

pointed out that 'There can be no valid objection to the taxation or the exercise of any right or power incident to * * * ownership of the gasoline which falls short of a tax directly imposed on its use in interstate commerce, deemed forbidden in *Helson* v. *Kentucky*, 279 U. S. 245, 73 L. Ed. 683, 49 S. Ct. 279.' "

We are not greatly concerned with the name by which the tax is called. It is the effect of the tax that is material. "State taxes upon national commerce or its incidents do not depend for their validity upon the choice of words but upon the choice of the thing taxed." *Southern Pac. Co.* v. *Gallagher*, 306 U. S. 167, 59 S. Ct. 389, 83 L. Ed. 586.

We are unable to agree with the plaintiff that the imposition of the tax discriminates against it in carrying on its operations as an instrument of interstate commerce, or that it creates such a burden as amounts to regulation. Every tax is, to some extent, a burden upon the subject to which it affixes itself. The test is not whether it is a burden, but whether it is discriminatory or regulatory.

In *Dunston* v. *Norfolk, supra,* we said:

"Under the principles at present applied, the test of the validity of a State taxing law is whether it may, in its practical operation, be made an instrument for impeding or destroying interstate commerce or placing it at a disadvantage in competition with intrastate business."

Measured by that test, we find no discrimination, actual or potential, against the operations of the plaintiff or any burden in the nature of a regulation. It is subject only to the same tax which the State imposes upon intrastate commerce.

The case of *Helson* v. *Kentucky*, 279 U. S. 245, 49 S. Ct. 279, 73 L. Ed. 683, decided in 1929, relied on by the plaintiff, may be readily distinguished from the case at bar. In that case Kentucky sought to tax the use of gasoline used in the propulsion of a boat moving in interstate commerce, where none of the gasoline was purchased in Kentucky, but all of it was purchased in another State. Under the same facts in Virginia, the plaintiff would pay no tax.

The sale of gasoline is a taxable event in Virginia separate and apart from interstate commerce. The fact that subsequent to the sale the State employs a practical method or medium for ascertaining the amount of gallons used in flights of aircraft within the borders of the State to ascertain the amount of a refund to the purchaser of taxes previously paid and the amount of such previously paid taxes to be dedicated to the construction, maintenance and improvement of airports, etc., does not affect the validity of the tax lawfully imposed.

The tax may be sustained as one imposed as reimbursement for the expense of facilities provided by the State for the use of the plaintiff and others operating aircraft within the borders of Virginia. The 1938 and 1940 Acts, by express provisions, dedicate the retained proceeds from the tax on gasoline purchased and consumed in the propulsion of aircraft, within the borders of this State, to the "construction, maintenance and improvement of airports and landing fields to which the public now, or which it is proposed shall, have access, and for the promotion of aviation in the interest of operators and the public generally."

No other evidence that the tax is so applied is necessary, in the absence of proof to the contrary. The importance of these airfields and their equipment is testified to by the plaintiff. They are for the benefit and protection of interstate as well as intrastate operators of aircraft, and there is nothing inequitable in requiring that each should make a proper contribution thereto.

It has long been held that a State may impose a charge upon those engaged in interstate commerce as reimbursement for the expense of providing facilities for their use. In *Hendrick* v. *Maryland*, 235 U. S. 610, 35 S. Ct. 140, 59 L. Ed. 385, Mr. Justice McReynolds said:

"In view of the many decisions of this court there can be no serious doubt that where a state at its own expense furnishes special facilities for the use of those engaged in commerce, interstate as well as domestic, it may exact compensation therefor. The amount of the charges and the

method of collection are primarily for determination by the state itself; and so long as they are reasonable and are fixed according to some uniform, fair, and practical standard, they constitute no burden on interstate commerce. (Cases cited.) The action of the state must be treated as correct unless the contrary is made to appear. In the instant case there is no evidence concerning the value of the facilities supplied by the state, the cost of maintaining them, or the fairness of the methods adopted for collecting the charges imposed; and we cannot say from a mere inspection of the statute that its provisions are arbitrary or unreasonable."

See also *Clark* v. *Poor*, 274 U. S. 554, 47 S. Ct. 702, 71 L. Ed. 1199; *Ingels* v. *Morf*, 300 U. S. 290, 57 S. Ct. 439, 81 L. Ed. 653; *Dixie Ohio Exp. Co.* v. *State Revenue Comm.*, 306 U. S. 72, 59 S. Ct. 435, 83 L. Ed. 495.

For the foregoing reasons, we are of opinion to affirm the judgment of the trial court.

*Affirmed.*