## Richmond

### Lawrence R. Ambrogi, Etc.

### v.

### S. Roger Koontz, et al.

December 3, 1982.

Record No. 801408.

Present: All the Justices.

*George W. Johnston, III (Kuykendall, Costello & Hanes, P.C.,* on briefs), for appellant.
*William A. Johnston (Bruce E. Downing; Harrison & Johnston,* on brief), for appellees.

COCHRAN, J., delivered the opinion of the Court.

S. Roger Koontz and R. Thomas Malcolm, who held administrative positions in the public school system of Frederick County, filed a bill for declaratory judgment in the trial court against Lawrence R. Ambrogi, the Commonwealth's Attorney of the County. Koontz and Malcolm sought a determination whether, as members of the Board of Supervisors, they were prohibited by the Virginia Conflict of Interests Act (the Act), Code §§ 2.1-347 to -358, from voting on the appointment of members to the County School Board.

The facts were stipulated. Koontz, Chairman of the Board of Supervisors, was elected in 1975 and took office in January of 1976. He had been employed by the School Board continuously since 1951 and was a school principal at the time this suit was brought. Malcolm also was elected to the Board of Supervisors in 1975 and took office in January of 1976. He had been employed by the School Board continuously since 1965 and was a general supervisor of instruction when this litigation began.

The Act became effective in 1970. Acts 1970, c. 463. Code § 2.1-352 provides in pertinent part as follows:

Any officer or employee of any governmental agency or advisory agency who knows, or may reasonably be expected to know, that he has a material financial interest in any transaction, not of general application, in which the agency of which he is an officer or employee is or may be in any way concerned, shall disclose such interest to the governing board thereof, and disqualify himself from voting thereon or participating in any consideration thereof in behalf of such agency.

As amended in 1971, § 2.1-348, the definition section of the Act, provides:

As used in this chapter:

* * *

(f) *"Material financial interest"* shall include a personal and pecuniary interest accruing to an officer or employee or to his spouse or to any other relative who resides in the same household. Notwithstanding the foregoing:

* * *

(5) The provisions of this chapter *relating to personal service or employment contracts* shall not apply to any persons who were regularly employed by the same governmental agency or unit of government on or prior to June thirty, nineteen hundred seventy-one, *with regard to personal service or employment contracts with such governmental agency or unit of government.* [Emphasis added].

The trial court, acknowledging that exemptions from statutory restrictions are "often" narrowly construed, was of the opinion that the exemption of § 2.1-348(f)(5) was broadly drafted without limiting exceptions. The court ruled, therefore, that Koontz and Malcolm were exempted by this grandfather clause from the strictures of the Act. Without this exemption, the court added, Code § 2.1-352 would have prohibited them from voting on the appointment of members to the School Board because, as School Board employees themselves, Koontz and Malcolm would have had a "material financial interest" in that "transaction." By decree entered June 5, 1980, the court denied Ambrogi's Motion to Reconsider and declared that Koontz and Malcolm were exempt because each was regularly employed by the School Board on or before June 30, 1971.

Ambrogi contends that the grandfather clause merely validates the personal service contracts of persons who on the effective date of the 1971 amendment were employed in a dual capacity otherwise proscribed by the Act. He says that Koontz and Malcolm were not exempted from the Act because, although regularly employed by the School Board on the effective date of the Act, they were not at that time members of the Board of Supervisors.

Koontz and Malcolm argue that § 2.1-348(f)(5) is clear and unambiguous and was intended to exempt employment relationships existing at the effective date of the 1971 amendment from the definition of "material financial interest." Since § 2.1-352 requires them to abstain from voting only when they have a "material financial interest" in the transaction, they say that the effect of

§ 2.1-348(f)(5) is to suspend the operation of § 2.1-352 where the "material financial interest" is created by a grandfathered employment relationship such as their employment by the School Board.

Where the language of a statute is clear and unambiguous rules of statutory construction are not required. *See Harbor Cruises* v. *Commonwealth,* 217 Va. 458, 460, 230 S.E.2d 248, 250 (1976). However, § 2.1-348(f)(5) must be read as a part of the entire Act rather than as an independent statute. Examining the language of § 2.1-348(f)(5), we observe that it limits the Act's provisions "relating to personal service or employment contracts." The grandfather clause states that such provisions "shall not apply to any persons" employed by the government before 1971 "with regard to personal service or employment contracts with such governmental agency or unit of government."

The language of § 2.1-348(f)(5) is ambiguous in two respects. First, whether § 2.1-352 is a provision "relating to personal service or employment contracts" is uncertain from the face of the Act. Thus, although § 2.1-349.1 specifically refers to and deals with employment relationships, § 2.1-352, by contrast, makes no direct reference to employment relationships and focuses on conflicts in governmental decisionmaking.

Second, whether the application of § 2.1-352 which Koontz and Malcolm seek to avoid is one "with regard to personal service or employment contracts" is also unclear from the statutory language alone. The phrase could mean the grandfather clause protects grandfathered employees only where the validity of their employment is directly challenged. Read this way, § 2.1-348(f)(5) would not shelter Ambrogi and Koontz in this case since their jobs are not threatened. Alternatively, the quoted words could suspend any application of the Act which directly or indirectly affects a grandfathered employment relationship. Under this interpretation, Ambrogi and Koontz would be protected from the Act as the conflict in this case does arise out of employment relationships. Furthermore, allowing Koontz and Malcolm to vote on the selection of School Board members could indirectly affect their employment contracts with the School Board, just as barring them from voting would limit them in the performance of their duties as County Supervisors.

When the proper construction of a law is not clear from the words of a statute, the legislative intent is to be " 'gathered from

the occasion and necessity of the law, . . . the causes which moved the Legislature to enact it.'" *Vicars v. Sayler,* 111 Va. 307, 309, 68 S.E. 988, 989 (1910) (quoting *Fox's Adm'r v. Commonwealth,* 57 Va. [16 Gratt.] 1, 9 (1860)); *see also Richmond v. Sutherland,* 114 Va. 688, 691-93, 77 S.E. 470, 471-72 (1913). We turn, therefore, to the legislative history of the Act, as the events that prompted this legislation may illuminate the intent of the General Assembly in enacting the grandfather clause.

 The Act in § 2.1-347 provided that it repealed and superseded all general and special acts which were inconsistent with it. Shortly after the adoption of the Act, the Attorney General ruled that the Act prohibited a governmental agency such as a school board from employing persons who were married to each other or who were related and lived in the same household. The Attorney General concluded that the Act would invalidate certain preexisting employment contracts. *See* 1970-71 *Report of the Attorney General* 439 (1970); 1969-70 *Report of the Attorney General* 313 (1970). Under this construction, the new Act was apparently read as implicitly repealing § 22-206 (Repl. Vol. 1969) which had previously exempted from certain conflict-of-interest provisions teachers who were already employed by the School Board at the time that a conflict arose by virtue of a close relative's appointment to the School Board or selection as superintendent.

The record in the present case reflects that in July of 1970, the Virginia Education Assocation, Incorporated, obtained a temporary injunction in the Circuit Court of the City of Richmond prohibiting the Commonwealth and the Attorney General from enforcing the provisions of the Act in derogation of the employment by the Commonwealth, or any of its boards, commissions, agencies, or committees, of husbands and wives and other relatives residing in the same household. After the effective date of the 1971 amendment to the Act, the temporary injunction was dissolved and the cause dismissed on the ground that the issues in controversy had been mooted by the amendment.

The 1971 amendment, Acts 1971, Ex. Sess., c. 176, added to § 2.1-348(f) not only subparagraph (5) hereinabove set forth but also subparagraph (4) which read as follows:

> (4) The employment by the same governmental agency of an officer or employee and spouse or any other relative residing in the same household shall not be deemed to create a

material financial interest except when one of such persons is employed in a direct supervisory and/or administrative position with respect to such spouse or other relative residing in his household and the annual salary of such subordinate is seventy-five hundred dollars or more.

The amendment also explicitly repealed § 22-206 (Repl. Vol. 1969) and incorporated into the Act as § 2.1-349.1 its pertinent provisions prohibiting employment by a school board of persons closely related to the superintendent or a member of the school board, except for those employed before the superintendent or member took office.

It thus appears that the legislative intent in 1971 was to protect those persons whose existing contractual rights had been jeopardized by the recent interpretations of the new Act by the Attorney General. Subparagraph (5) might reasonably be construed to apply only to members of the same household or certain closely related persons who on or prior to June 30, 1971, were regularly employed by the same governmental agency. So construed, the preexisting contracts of such persons would be protected and the legislative purpose accomplished.

We may assume, as the parties appear to have assumed, that if Koontz and Malcolm had been members of the Board of Supervisors and supervisory employees of the School Board on or before June 30, 1971, they would have been permitted, under the grandfather clause, to vote on members of the School Board. Even if that were the law we would nevertheless conclude in this case that, as they did not occupy their present dual positions on and before the deadline, there was no conflict, and the grandfather clause does not confer upon them exemption from the provisions of § 2.1-352.

Furthermore, we observe that it was not their respective elections to the Board of Supervisors that subjected Koontz and Malcolm to the disclosure and abstention requirements of § 2.1-352. The conflict arose upon the subsequent determination by the voters of the county by referendum, which the record shows was held on November 7, 1978, pursuant to the provisions of § 22-79.4 (Repl. Vol. 1973), that members of the School Board should thereafter be appointed under § 22-79.3 (Repl. Vol. 1973) by the Board of Supervisors. Nevertheless, the conflict exists, and Koontz

and Malcolm are not exempt under § 2.1-348(f)(5) from compliance with the Act.

Counsel for Koontz and Malcolm conceded in oral argument that under his theory his clients would be forever exempted from the restrictions of the Act under the grandfather clause. Thus, it logically follows, as he further acknowledged, that if public school employees were elected to a local governing body twenty years after the 1971 amendment became effective the immunity provided by § 2.1-348(f)(5) would spring up and embrace them. We will attribute to the General Assembly no such unreasonable legislative intent. As an exception to the Act, we will construe this provision narrowly. *See, e.g., Piedmont & Northern Ry. Co.* v. *ICC,* 286 U.S. 299, 311-12 (1932); *USV Pharmaceutical Corp.* v. *Richardson,* 461 F.2d 223 (4th Cir. 1972) (narrowly construing a grandfather clause exception), *aff'd,* 412 U.S. 655 (1973); *see generally,* 2A Sutherland Statutory Constructon §§ 47.08-47.12 (C. Sands 4th ed. 1972). Furthermore, a statute should, if possible, be given a reasonable construction which will effect rather than defeat a legislative purpose evident from the history of the legislation. *American Airlines, Inc.* v. *Battle,* 181 Va. 1, 8-11, 23 S.E.2d 796, 800-01 (1943). We hold that the grandfathering provisions of § 2.1-348(f)(5) apply only to contract rights in effect on June 30, 1971, and that they are inapplicable to the governmental conduct which Koontz and Malcolm seek to authorize in this suit.

We think it is significant that § 2.1-352, which proscribes voting by governmental officials like Koontz and Malcolm on matters in which they have a "material financial interest," was not altered in any way by the amendments of 1971. This is further evidence that the legislature did not intend by its changes in 1971 and particularly by § 2.1-348(f)(5) to protect the conduct challenged in this case.

Under § 2.1-352 Koontz and Malcolm are required to abstain from voting because, as employees of the School Board, they have a "material financial interest" in the appointment of School Board members. Their contracts of employment are negotiated individually with the School Board and are not, therefore, transactions of "general application" within the exception provided in § 2.1-352.

We will reverse the decree of the trial court and enter a final decree here in favor of Ambrogi consistent with the views herein expressed.

*Reversed and final decree.*