**Richmond**

ROY A. WEST

V.

DWIGHT C. JONES, ET AL.

Record No. 831214.

November 30, 1984.

Present: All the Justices.

*John S. Battle, Jr. (Rosewell Page, III; Thomas E. Spahn; Leroy R. Hassell; McGuire, Woods & Battle*, on briefs), for appellant.

*Murray J. Janus (Theodore I. Bremner; Bremner, Baber & Janus*, on brief), for appellees.

POFF, J., delivered the opinion of the Court.

The single issue framed below and on this appeal is whether the Comprehensive Conflict of Interests Act of 1984 prohibits a member of Richmond City Council from participating in the selection and appointment of members of the Richmond School Board while he is employed as a school principal.

In June 1983, five of the seven members of the Richmond School Board[1] and one of the nine members of Richmond City Council[2] (collectively, petitioners) filed a petition against Roy A. West seeking declaratory judgment and injunctive relief. Petitioners asked the court to declare that West, Mayor of the City of Richmond, a member of City Council, and principal of Albert H. Hill Middle School, was prohibited by the Virginia Conflict of Interests Act of 1970, Code §§ 2.1-347, *et seq.* (Repl. Vol. 1979), from voting on appointments to the School Board. At that time, four appointments were in prospect, and the trial court entered a

---

[1] Dwight C. Jones, Theresa T. Caldwell, Leontine T. Kelly, John L. Howlette, and Reginald L. Brown.

[2] Walter T. Kenney.

temporary injunction to expire July 1, 1983. When the old Act was repealed and replaced, effective July 1, 1983, by the Comprehensive Conflict of Interests Act, Code §§ 2.1-599, *et seq.* (Cum. Supp. 1984), petitioners amended their petition to conform to the terms of the new Act, and the parties submitted the case for decision on the pleadings, stipulation of facts, exhibits, and memoranda of counsel.

The dispute centers principally upon construction of § 2.1-610(A)[3] of the new Act which provides, in part, that an officer or employee of government, including a member of the governing body of a local government, is required to "disqualify himself from participating in any transaction on behalf of his agency when (i) he has a personal interest in the transaction and (ii) the transaction has specific application to his personal interest."

From the stipulation of facts it appears that the Richmond school system, funded by an annual budget of 79 million dollars, has 53 principals, more than 100 assistant principals and supervisors, and nearly 2,000 teachers. The School Board, an independent entity which derives its powers from Va. Const. art. VIII, §§

---

[3] **§ 2.1-610. Prohibited conduct concerning personal interest in a transaction. — A.** Each officer of all state governmental agencies, including members of the General Assembly, and state advisory agencies and each employee of state governmental agencies and state advisory agencies and each officer of local governmental agencies, including members of the governing bodies of counties, cities and towns, and local advisory agencies, and each employee of local governmental agencies and local advisory agencies shall disqualify himself from participating in any transaction on behalf of his agency when (i) he has a personal interest in the transaction and (ii) the transaction has specific application to his personal interest. He shall not vote or in any manner act on behalf of his agency in such a transaction of specific application and his disqualification shall be noted in the records of the agency. As used in this section, "specific application" means a transaction which affects the personal interest of the officer or employee specifically, as opposed to a transaction which affects the public generally, although in the latter situation the officer's or employee's interest, as a member of the public, may also be affected by that general transaction. For example, an amendment to a zoning map affecting fewer than ten parcels of land is a transaction having specific application to a person who has a personal interest in one of the parcels and is not a general transaction. If the transaction is one which affects the public generally, although the officer's or employee's interest may also be involved, it will not be necessary for such officer or employee to disqualify himself from participating in the transaction on behalf of the agency.

Disqualification under the provisions of this section shall not prevent any employee having a personal interest in a transaction in which his agency is involved from representing himself, his spouse or any relative in such transaction provided he does not receive compensation for such representation and provided he complies with the disqualification and disclosure requirements of this chapter.

1, 7, and statutory grants, has adopted policies under which it fixes salaries, based upon seniority and graduate degree status, according to a general schedule uniformly applicable to all employees; no salary is negotiated individually. Under this schedule, the annual salary West earns for his services as principal is approximately $39,000.

Principals and teachers are hired, reassigned, or terminated pursuant to the policies established by the School Board. The Board can "terminate" the employment of a principal "if there is a lack of funds, a lack of jobs or a reduction in force", and a principal may be "dismissed" for "gross misconduct; commission of a felony or misdemeanor; and violation of School Board policies." A principal may be transferred to another position upon the recommendation of the Superintendent of Schools, subject to ratification by the School Board, and the Superintendent can "discipline" a principal "with pay", subject to appeal to the School Board. The parties stipulate that "[t]he School Board has the power to set policies for the school system, can change the policies and, if it saw fit, could give individual raises."

In a letter opinion, the trial court found that "because of the nature of the relationship between Mayor West as a middle school principal and the School Board, Mayor West has a personal interest in his salary and professional status that will benefit or suffer from the action of City Council in its consideration of the nomination and appointment of School Board members"; that although "the selection of School Board members is a transaction which affects the public generally", the interests of the general public are not affected "in the same way and to the same degree as the personal interests of Mayor West"; and, therefore, that the transaction had "specific application to his personal interest" within the intendment of that phrase as used in § 2.1-610(A). By final decree incorporating the letter opinion, the trial court granted the prayer of the petition, and we awarded Mayor West an appeal.

West argues on brief (1) that he "does not have a 'personal interest' in the appointment of School Board members" and (2) that he is not disqualified from voting because, under the language of the new Act, "his vote on School Board appointments is not a vote with 'specific application' to him".

In support of his first argument, West points to Code § 2.1-600, the definitional section of the new Act. A "personal interest" is "a personal and financial benefit or liability accruing to an

officer or employee". A "transaction" is "any matter considered by any governmental or advisory agency on which official action is taken or contemplated." A "personal interest in a transaction" is "a personal interest of an officer or employee in any matter considered by his agency". Explicating that definition, the statute provides that "personal interest will be deemed to exist where an officer or employee . . . has (a) a personal interest in property . . . that . . . will benefit or suffer from the action of the agency considering the transaction".

The parties agree that City Council's vote on School Board appointments is the transaction in issue. The threshold question, then, is whether West has a personal interest in that transaction which will benefit or suffer from his participation therein. Accenting the word "will", West contends that "the new Act . . . addresses only actual, present conflicts of interests". If the trial court's construction is allowed to stand, he continues, the Act "disqualifies elected officials from voting on matters of widespread public significance whenever a creative litigant can conceive of some distant, hypothetical personal interest which may or may not be affected at some unknown future time."

The declared purpose of the new Act is to assure citizens of this Commonwealth "that the judgment of public officers and employees will not be compromised or affected by inappropriate conflicts" and, in the application of the Act, it must be "liberally construed to accomplish its purpose". Code § 2.1-599.

We believe West's interpretation of the word "will" defeats the purpose of the Act. Conflicts of interest are proscribed precisely because they *may* compromise or affect the judgment of public servants at the expense of private citizens. If, at the time the transaction is pending, it is reasonably foreseeable that the public servant's personal interest could benefit or suffer from his participation in that transaction, the conflict and the danger it poses to the public interest arise at the moment the transaction occurs. Hence, according the Act a liberal construction in aid of its stated purpose, we conclude that the General Assembly intended the word "will" to carry the same import as the word "may".

In support of the petitioners' position that West's salary as an employee of the School Board is a "personal interest in property", Code § 2.1-600, they cite *Ambrogi* v. *Koontz*, 224 Va. 381, 389, 297 S.E.2d 660, 664 (1982), where we said that a principal of a public school and a school supervisor, "as employees of

the School Board . . . have a 'material financial interest' in the appointment of School Board members." As West points out, the standard for disqualification under former Code § 2.1-352 reviewed in *Ambrogi* was a "material financial interest", and under the policies followed by the School Board in that case, the contracts of employment were negotiated on an individual basis. West concludes, therefore, that since the policies prescribed by the Richmond School Board require that his salary be fixed according to a general personnel schedule rather than by individual negotiation, *Ambrogi* is inapposite. The parties have stipulated, however, that the "Board has the power to . . . change the policies and, if it saw fit, could give individual raises." Moreover, one of the policies a school board is free to adopt is the power, granted by statute, to reassign a principal to a teacher's position at a *reduced* salary and to do so without cause and irrespective of the principal's rights of tenure. Code § 22.1-294.

Since the transaction in issue involves the appointment of four of the seven members of the School Board, a change in policies is a reasonably foreseeable possibility. Indeed, the same is true, though perhaps to a lesser degree, if only one vacancy existed. We hold, therefore, that West has a personal interest in appointments to the Board which could benefit or suffer from his participation in the transaction.

Participation in a transaction is proscribed only when it "affects the personal interest of the officer or employee specifically, as opposed to a transaction which affects the public generally". Code § 2.1-610(A). West argues that, since City Council's vote on appointments to the Board obviously affects the public generally, the only question to be decided is whether that transaction, as distinguished from "a *later* decision by the School Board might be of 'specific application' to [him]". Pursuing his interpretation of the word "will", West reasons that "[n]othing about his salary, his responsibility or any aspect of his job will change at the time he votes". It is true, of course, that his personal interest will not change contemporaneously with the vote. But, as we have said, the transaction, when consummated, immediately creates the possibility that his personal interest will benefit or suffer from future actions of the Board, and those actions may be decided by the vote of a single new member. Such a possibility poses the very danger the Act seeks to prevent, *viz.*, that West's judgment on the

vote he casts may be "compromised or affected by inappropriate conflicts". Code § 2.1-599.

We are of opinion, therefore, that the appointment of members of the School Board is a matter which has specific application to West's personal interest.

Next, West contends that "[e]ven if it is found that [he] has a personal interest and his vote on appointments is of 'specific application,' the new Act still permits him to vote." He relies upon the following language in § 2.1-610(A) of the new Act:

> If the transaction is one which affects the public generally, although the officer's or employee's interest may also be involved, it will not be necessary for such officer or employee to disqualify himself from participating in the transaction on behalf of the agency.

West maintains that this new provision prescribes a balancing of public and private interests and that the balance weighs in favor of his right to participate in the transaction in question.

We agree with West that the public in general and his constituents in particular have an interest in the orderly administration of the school system, and we recognize that his salary as principal constitutes only .05% of a budget of more than 79 million dollars. But the overriding public interest the Act is designed to promote is the right of the citizens "to be assured that the judgment of public officers and employees will not be compromised or affected by inappropriate conflicts." Code § 2.1-599. To endorse the interpretation West places upon the new provision would be to ignore the statutory command that "any exception or exemption to . . . applicability [of the Act] shall be narrowly construed." *Id.*

As we construe the language of the new provision, a public servant whose interest is "involved" in a transaction may participate in that transaction only when his interest is one limited to that which he shares in common with other members of the public at large. West is a member of City Council, and as one of a group of employees of the School Board, he has a personal interest in Council's selection and appointment of members of the School Board apart from and in addition to that of the general public. We believe such an interest raises a conflict within the purview of the Act.

Finally, West claims that the exception written into Code § 2.1-606 exempts him from coverage under the Act. That section provides in part:

> No person elected or appointed as a member of the governing body of a county, city or town shall have a personal interest in . . . any contract *other than in a contract of regular employment* with any . . . governmental agency if such person's governing body appoints a majority of members of the governing body of the second governmental agency. [Emphasis supplied.]

West seems to construe the italicized language to mean that his contract of employment with the School Board does not constitute a conflict of interest. In our view, Code § 2.1-606 has two effects. It forbids a member of a local governing body to have a personal interest in certain contracts with a governmental agency if the majority of the officers of that agency are appointed by the local governing body. And, by way of exception, it permits a member of a local governing body to hold a job with such an agency. Nothing in the section authorizes such a person who works for such an agency to participate in the appointment of the officers of that agency.

The record is utterly devoid of any suggestion that Mayor West would allow his judgment on any issue pending before City Council to be compromised or affected by any consideration of personal interest. Such proof is not required, however, and we hold that the Comprehensive Conflict of Interests Act of 1984 prohibits him from participating in the nomination and appointment of members of the School Board so long as he is employed by the Board, and we will affirm the judgment.

*Affirmed.*