## CIRCUIT COURT OF AUGUSTA COUNTY

Rebecca C. Williams

v.

Augusta County School Board

February 25, 1993

By Judge Duncan M. Byrd, Jr.

This matter was heard by the Court on December 14, 1992. At the conclusion of the hearing, the Court reserved judgment pending a review of the evidence and arguments of counsel.

The Plaintiff, Rebecca C. Williams, ("Williams") seeks to overturn a decision by the defendant, Augusta County School Board, that Williams may not be considered for a teaching position with the Augusta County Public Schools. The School Board found Williams ineligible for a teaching position because her brother-in-law, George P. Williams, is the chairman and a member of the School Board.

The Plaintiff was a teacher in the Augusta County school system from August, 1969, until May, 1975. Williams declined employment for the 1975–76 school year. George P. Williams, Rebecca Williams' brother-in-law, assumed a seat on the School Board in September, 1983. During the summer of 1988, Williams requested that she be considered for a teaching position by the School Board. The School Board found Williams could not be hired without violating the Virginia conflicts of interest statute addressing "School Boards and Employees of School Boards," § 2.1–639.16.

The School Board came to their decision despite a contrary finding by the Augusta County Commonwealth's Attorney. The Commonwealth's Attorney, in an April 24, 1991, opinion letter, relied upon earlier Virginia Attorney General opinion letters in concluding that Williams was not disqualified for consideration as a teacher.

The issue before the Court is whether the School Board's interpretation of § 2.1–639.16 disqualifying Williams for consideration as a teacher should be reversed.

Williams raises two claims. First, she claims she is being disqualified because of a more restrictive local policy, Augusta County School Board Policy 5.200. However, the record indicates the School Board based their decision on the state Conflicts of Interest Act, § 2.1–639.16. Therefore, the Court does not address the constitutionality of the local policy.

Williams' second claim is based on an exception to § 2.1–639.16. Williams claims she is exempted from the Conflicts of Interest Act. Resolution of this issue requires statutory construction and interpretation. Section 2.1–639.16 states:

> [I]t shall be unlawful for the school board of any county or city or of any town constituting a separate school division to employ or pay any teacher or another school board employee from the public funds, federal, state or local, or for a division superintendent to recommend to the school board the employment of any teacher or other employee, if the teacher or other employee is the father, mother, brother, sister, spouse, son, daughter, son-in-law, daughter-in-law, sister-in-law, or brother-in-law of the superintendent, or of any member of the school board . . . .
>
> This section shall not apply to any person within such relationship who has been (i) regularly employed or (ii) employed as a substitute teacher or teacher's aide by any school board prior to the taking of office of any member of such board or division superintendent of schools, or who has been regularly employed or employed as a substitute teacher or teacher's aide by any school board prior to the inception of such relationship. A person employed as a substitute teacher may not be employed to any greater extent than he was employed by the school board in the last full school year prior to the taking of office of such board member or division superintendent or to the inception of such relationship . . . .

The Commonwealth's Attorney interpreted this statute as allowing the School Board to hire Williams, even though she is the sister-in-law of a board member. The Commonwealth's Attorney found Williams

eligible under the exception "(i) regularly employed." The Commonwealth's Attorney, in arriving at his decision, relied upon an opinion letter by the Virginia Attorney General.[1] Williams takes the same approach as the Commonwealth's Attorney and also relies upon the Attorney General opinion letters. Attorney General opinion letters, however, have no binding effect on the Court. *See, Johnson v. Prince William County School Board*, 241 Va. 383 (1991).

Williams claims that because she was once a teacher, she is within the exception of "regularly employed." The court does not agree. "Non-technical words in statutes are taken to have been used in their ordinary sense and acceptation." *Board of Supervisors v. Boaz*, 176 Va. 126, 130 (1940). When this clause is read in context, the court concludes an intention by the Legislature to exempt individuals who are part of an ongoing relationship with a school board when a conflict of interest arises. The Virginia Supreme Court has read "regularly" in the employment context to be a word of limitation. *Gomes v. City of Richmond*, 220 Va. 449, 452 (1979). The Legislature did not intend "regularly employed" to be an exemption for everyone who has ever been employed by the school board, no matter how long ago.

Section 2.1–639.16 must be read as a part of the entire Act not as an independent statute. *Ambrogi v. Koontz*, 224 Va. 381, 386 (1982). A statute should, whenever possible, be construed in a manner that effectuates the legislative purpose. *American Airlines, Inc. v. Battle*, 181 Va. 1, 8–11 (1943). The purpose of the Conflict of Interests Act is to ensure that decisions are not compromised by inappropriate conflicts. To achieve this purpose, the act must be "liberally construed." Code, § 2.1–639.1. The legislative purpose of avoiding inappropriate conflicts should be accomplished by reading the exceptions to the statute narrowly. *See, West v. Jones*, 228 Va. 409 (1984); *Ambrogi v. Koontz*, 224 Va. 381 (1982).

The Virginia Supreme Court analyzed an earlier version of the Conflicts of Interest Act which included an exception using the term "regularly employed." The Court found the legislative intent for this exception to the Act was to protect existing contractual rights. The finding, that existing contractual rights were protected, supports a conclusion by the Court interpreting "regularly employed" to exclude

---

[1] *See* April 24, 1991, letter from A. Lee Ervin, Augusta County Commonwealth's Attorney, to Thomas E. Albro, page 2.

someone who has taught thirteen years earlier. *See, Ambrogi v. Koontz,* 224 Va. 381 (analyzing an earlier version of the Conflicts of Interest Act).

Williams' claim, that she is entitled to be considered for a teaching position because she was once a teacher, essentially, is a claim that the legislative intent was to create a grandfather clause for all former teachers. Her interpretation is that anyone who has taught in a school system is then grandfathered out of the applicable section of the Conflicts of Interest Act no matter what conflicts of interest may arise or how many years later the former employee chooses to resume contacts with the school system. However, her reading of the act is contrary to usual statutory construction. *See, USV Pharmaceutical Corp. v. Richardson,* 461 F.2d 223 (4th Cir. 1972) (narrowly construing a grandfather clause exception), *aff'd,* 412 U.S. 655 (1973). Absent express language, the court will not read into the act an exemption which works as a grandfather clause for all people who have at any time been employed by the school system without regard to the nature of the conflict of interest which may arise or the time which has passed since their employment.

Where, as here, the proper construction of an act is not immediately apparent, a court must decide "the causes which moved the Legislature to enact it." *Ambrogi v. Koontz,* 224 Va. at 387 (quoting *Fox's Adm'r v. Commonwealth,* 57 Va. (16 Gratt.) 1, 9 (1860)). The purpose of the Conflicts of Interest Act is to ensure that government officials do not make, or give the appearance of making, decisions based on improper motives. To allow the sister-in-law of the chairman of the School Board to be hired, after thirteen years away from teaching, would undermine this legislative purpose. The Virginia Attorney General has issued opinion letters on this issue for over thirty years, including one in this case. The Attorney General has consistently found that former teachers fall under the regularly employed exception. The letters cite earlier letters. The underlying rationale for these opinions has been that the statute "should be construed against rendering a person ineligible for employment." 1959–60 *Report of the Attorney General* 317 (1959). Since 1959, the statute has been changed numerous times. This employment rationale is contrary to the current legislative intent. The current legislative intent, as stated earlier, is to ensure that employment decisions relating to school officials are not compromised by inappropriate conflicts. The Attorney General's original premise, maxi-

mizing employment, is not applicable to the act today. Therefore, these opinion letters are incorrect as they are based upon a faulty premise.

The Court will not address the issue of how recently one must have been employed in order to fall under the "regularly employed" exception. However, the Court does conclude that the School Board's determination that Williams, after being absent thirteen years from teaching, does not fall under the regularly-employed exception is sound and will not be disturbed. In arriving at this decision, it is helpful to keep in mind that the Virginia Supreme Court has consistently held that a school board's decision "will not be disturbed by the courts unless the board acted in bad faith, arbitrarily, capriciously, or in abuse of its discretion, or there is no substantial evidence to sustain an action." *Spotsylvania School Board v. McConnell*, 215 Va. 603, 607 (1975); *see also, Russell County School Board v. Anderson*, 238 Va. 372, 386 (1989); *Bristol Virginia School Board v. Quarles*, 235 Va. 108, 119 (1988).